## Unger v. Allen

*Gary S. Figore,* for plaintiffs.

*Howard S. Stevens,* for defendants Allen, Fassl, Sotack, Lehigh Valley Physicians Group, Lehigh Valley Hospital and Lehigh Valley Health Network.

*Howard M. Klein,* for defendants Logan and Pinkney.

BLACK, *J.,* September 26, 2006—This is a medical malpractice action in which the plaintiffs allege that their 15-year-old daughter, Meredith, died as a result of professional negligence on the part of the defendants in treating her for a Tylenol overdose. The individual defendants are the physicians and nurses who treated Mer-

edith when she was brought to the emergency room of the defendant Lehigh Valley Hospital (LVH).

The plaintiffs have filed a second amended complaint in which they assert seven causes of action individually and on behalf Meredith's estate. These causes of action include a claim on their own behalf for negligent and intentional infliction of emotional distress (Count I), a claim on their own behalf for civil conspiracy (Count II), claims under the Wrongful Death Act[1] (Counts III and IV), claims on behalf of Meredith's estate under the Survival Act[2] (Counts V and VI), and a claim for punitive damages (Count VII).

Before the court for disposition are two separate sets of preliminary objections to the plaintiffs' second amended complaint. The first set of objections was filed by the defendants Sabrina Logan M.D., and Kerrie Pinkney. A second set of objections was filed by the remaining defendants. For the reasons stated below, we have sustained some of the objections and overruled others.

## FACTUAL BACKGROUND

According to the complaint,[3] on February 15, 2004, Meredith L. Unger, then 15 years of age, was received into the emergency room at LVH. At the time of her arrival Meredith was unconscious. The medical team at LVH, including the defendants Brian D. Allen R.N. and/ or B.D.A. R.N., Joseph Fassl M.D., William Sotack D.O.

---

1. 42 Pa.C.S. §8301.

2. 42 Pa.C.S. §8302.

3. All references to the "complaint" are to the second amended complaint.

and Sabrina Logan M.D., evaluated Meredith's condition and concluded that she was suffering from acetaminophen toxicity resulting from the ingestion of Tylenol. A nasogastric tube and an endotracheal tube were inserted through Meredith's nose and mouth respectively. A medical team member ordered the administration of N-acetylcysteine (Mucomyst) to Meredith through her *nasogastric* tube. However, one of the defendants erroneously administered the Mucomyst into Meredith's *endotracheal* tube, causing severe respiratory complications.

Meredith's condition deteriorated significantly after the erroneous administration of Mucomyst. Later the same day, on February 15, 2004, Meredith was transported by helicopter to Children's Hospital of Philadelphia (CHOP) for a liver transplant. Her condition continued to deteriorate at CHOP, and she died two days later, on February 17, 2004.

The erroneous administration of Mucomyst was not noted on the LVH records until February 17, 2004, two days after Meredith had been transported to CHOP. Consequently, the medical records provided to CHOP did not disclose the Mucomyst mishap.

## DISCUSSION

### I. *The Preliminary Objections of Defendants Sabrina Logan M.D. and Kerrie Pinkney M.D.*

### A. Motion To Strike (Demurrer) for Failure To State a Cause of Action for Loss of a Child's Consortium

In their complaint the plaintiffs claim damages in their own right for loss of their child's companionship, rela-

tionship, society, comfort, guidance, solace and protection.[4] However, under the law of Pennsylvania such damages are not recoverable for the death of a child. Therefore, the plaintiffs' claim for such damages must be stricken from the complaint.

The Pennsylvania courts have recognized only two categories of damages recoverable by a parent for injury to, or death of, a minor child. The first category includes hospital, nursing, medical, funeral expenses and expenses of administration of the child's estate. This category is specifically provided for in section 8301(c) of the Wrongful Death Act.[5] The second category of damages is the pecuniary value of the loss of the child's services during minority. This second category is recoverable as "other damages" in section 8301(c). Our appellate courts have held that the pecuniary value of the services lost must be reduced by the parent's savings in the cost of maintaining the child. *Gaydos v. Domabyl,* 301 Pa. 523, 152 A. 549 (1930).

It is well-settled in Pennsylvania that when a child has been tortiously injured, the parents may not recover for their affectional or emotional loss. See *Quinn v. City of Pittsburgh,* 243 Pa. 521, 90 A. 353 (1914) (denying mother's claim for loss of companionship resulting from serious injury to her 10-year-old daughter); *Brower v. City of Philadelphia,* 124 Pa. Commw. 586, 557 A.2d 48 (1989) (denying parents' claim for loss of their 19-year-

---

4. See complaint, ¶¶96, 97 and 98.

5. *Special damages.*—In an action brought under subsection (a), the plaintiff shall be entitled to recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death. 42 Pa.C.S. §8301(c).

old son's services and his comfort, society and companionship, where he was rendered quadriplegic from accident).

Our appellate courts have applied the same limitation in cases involving the death of a child. See *Jackson v. Tastykake Inc.*, 437 Pa. Super. 34, 648 A.2d 1214 (1994) (denying parents' wrongful death claim for loss of child's companionship, comfort and society); *Schroeder v. Ear, Nose and Throat Associates of Lehigh Valley Inc.*, 383 Pa. Super. 440, 557 A.2d 21 (1989), *appeal denied*, 523 Pa. 650, 567 A.2d 653 (1989) (denying claim by parents of aborted fetus for loss of filial consortium). We previously reviewed the historical development of Pennsylvania law on this issue in *Covert v. Cedar Fair L.P.*, no. 98-C-79 (Lehigh Cty., December 28, 2000) at www. lccpa.org, and concluded that parents could not recover for loss of filial consortium arising from the death of their child.

More recently, in *Department of Public Welfare v. Schultz*, 822 A.2d 876 (Pa. Commw. 2003), the Commonwealth Court also rejected a parental claim for loss of filial consortium. In that case a parent had brought a wrongful death and survival action against the State Hospital and Department of Public Welfare after the child/patient walked out of the hospital and was found frozen to death. The court held that a parent may not recover noneconomic damages for the loss of support, companionship and society of a deceased child. The court determined that a cause of action for loss of consortium is a claim available only to a spouse.

Accordingly, we must grant the motion to strike the allegations set forth in paragraphs 96, 97 and 98 of the

complaint for loss of the child's companionship, relationship, society, comfort, guidance, solace or protection.

The plaintiffs' claim for loss of their child's services and support during her minority remains, since parents can recover under the Wrongful Death Act for loss of the pecuniary value of such services and support. Any such loss, however, must be offset by the savings to the plaintiffs in the cost of maintaining the child during minority. Therefore, as a practical matter, the plaintiffs may be unable to prove a net financial loss from the death of their child. Indeed, in this day and age it will be a rare case where the pecuniary value of a loss of a minor child's services exceeds the parents' savings in the costs of maintaining the child. Nevertheless, we are still at the pleading stage in this case, and therefore we cannot summarily rule out this portion of the plaintiffs' claim.

### B. Motion To Strike (Demurrer) for Failure To State a Claim for Negligent Infliction of Emotional Distress

In Count I the plaintiffs assert a claim in their own right for negligent infliction of emotional distress. To succeed on such a claim, a plaintiff must establish three elements: (1) that the plaintiff was located near the scene of the traumatic event; (2) that the plaintiff suffered shock from the sensory and contemporaneous observance of the event; and (3) that there was a close relationship between the plaintiff and the victim. *Sonlin v. Abington Memorial Hospital,* 748 A.2d 213, 217 (Pa. Super. 2000). The contemporaneous observation of the injury-causing event is an essential element of the claim. The premise is that one who "is not present at the scene of tortious

conduct . . . is buffered against the full impact that presence and observation would have entailed. . . . 'By contrast, the relative who contemporaneously observes the tortious conduct has no time span in which to brace his or her emotional system.'" *Taylor v. Albert Einstein Medical Center,* 562 Pa. 176, 183, 754 A.2d 650, 653 (2000), citing *Mazzagatti v. Everingham,* 512 Pa. 266, 279, 516 A.2d 672, 679 (1986). (citations omitted)

In this case, the complaint does not aver that the plaintiffs actually witnessed the erroneous administration of the Mucomyst to their daughter, and plaintiffs' counsel acknowledged at oral argument that they did not do so. The plaintiffs allege only that they were "in close proximity to and in Meredith's presence immediately before and after the Mucomyst mishap."[6] In Pennsylvania, proximity to an accident is not enough to sustain a claim for negligent infliction of emotional distress. Since the plaintiffs did not actually witness the mishap, their claim for negligent infliction of emotional distress must be dismissed.

### C. Motion To Strike (Demurrer) for Failure To State a Claim for Intentional Infliction of Emotional Distress

In Count I the plaintiffs also seek to recover damages in their own right for the tort of intentional infliction of emotional distress. Section 46 of the Restatement (Second) of Torts (1965) defines this tort as follows:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional dis-

---

6. Complaint ¶93.

tress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

"(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

"(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

"(b) to any other person who is present at the time, if such distress results in bodily harm."

The defendants contend that the Pennsylvania appellate courts have not recognized a cause of action for intentional infliction of emotional distress. However, although our appellate courts have not expressly recognized this tort and have not expressly adopted section 46 of the Restatement, they have cited section 46 as setting forth the minimum requirements for such a cause of action. See *e.g., Taylor v. Albert Einstein Medical Center, supra.* We believe that in a proper case our appellate courts, which usually follow the Restatement, would adopt section 46 as the law of Pennsylvania.

Nevertheless, we do not believe this is a proper case. The allegations of the complaint are not sufficient to state a cause of action for intentional infliction of emotional distress. In *Taylor v. Albert Einstein Medical Center, supra,* our Supreme Court considered the requirements of a claim for intentional infliction of emotional distress where the parents of a deceased child had brought a medical malpractice action. The court specifically considered whether the parents must have had a contemporaneous sensory perception of the intentional tort com-

mitted upon their child in order to recover. In concluding that there was such a requirement, the court expressly relied upon section 46 of the Restatement, as well as its accompanying comments. This is the same requirement discussed above[7] for sustaining a claim of negligent infliction of emotional distress. Since the plaintiffs in the instant case did not witness Meredith's injury, in accordance with the *Taylor* decision, they cannot recover in their own right for intentional infliction of emotional distress *on Meredith.*

The plaintiffs assert a second theory in support of their claim of intentional infliction of emotional distress, *i.e.,* a claim that the defendants intentionally inflicted emotional distress *on them.* They allege that the individual defendants failed to disclose the Mucomyst mishap to them and intentionally failed to document their daughter's medical chart to reveal the mishap.[8] However, the complaint does not aver that these failures were intended to cause emotional distress to the plaintiffs, and it is difficult to conceive how they could be so intended.

Moreover, these alleged failures, while inappropriate, do not in our judgment rise to the level of extreme and outrageous behavior that is required for a claim for intentional infliction of emotional distress. As our Supreme Court stated in *Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745 (1998), to sustain such a claim, it is necessary that the conduct complained of "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.*

---

7. *Supra* at 6.
8. Complaint, ¶109B.

at 151, 720 A.2d at 754, citing *Buczek v. First National Bank of Mifflintown,* 366 Pa. Super. 551, 558, 531 A.2d 1122, 1125 (1987).

The conduct alleged by the plaintiffs, a two-day delay in recording information on a medical chart, does not meet this high standard.

For these reasons, the plaintiffs' claims for intentional infliction of emotional distress must be dismissed.

### D. Motion To Strike (Demurrer) for Failure To State a Cause of Action for Civil Conspiracy

In Count II of their complaint the plaintiffs assert a claim for civil conspiracy. They allege that the defendants "agreed/conspired to not timely document Meredith's medical chart, to not timely inform the parents of the Mucomyst mishap and . . . to not inform the receiving healthcare providers at CHOP of Meredith's actual condition and inform them upon Meredith's transfer of the Mucomyst incident."[9]

The ingredients of a cause of action for civil conspiracy were recently summarized in *Goldstein v. Phillip Morris Incorporated,* 854 A.2d 585, 590 (Pa. Super. 2004) as follows:

"In order to state a civil action for conspiracy, a complaint must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. . . .

---

9. Complaint, ¶61.

Additionally, 'absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.'" (citations omitted) See also, *McKeeman v. Corestates Bank N.A.,* 751 A.2d 655, 660 (Pa. Super. 2000).

Proof of malice is also an essential element of the cause of action. *Burnside v. Abbott Laboratories,* 351 Pa. Super. 264, 278, 505 A.2d 973, 980 (1985).

The defendants point out that under Pennsylvania law a single entity cannot conspire with itself; nor can the agents of an entity conspire among themselves. *Rutherfoord v. Presbyterian-University Hospital,* 417 Pa. Super. 316, 612 A.2d 500 (1992). However, there are three exceptions to this general rule: (1) where an employee acts in his own bests interests, not for the benefit of the corporation, (2) where a third party participated in the conspiracy, and (3) where a parent and subsidiary corporation have participated in the conspiracy. *Castle v. Crouse,* no. 03-5252, 2004 WL 257389, at 6 (E.D. Pa., Feb. 11, 2004); *Jackson v. T & N Van Service,* 117 F. Supp.2d 457 (E.D. Pa. 2000); *Commonwealth of Pennsylvania v. BASF Corp.,* no. 3127, 2001 WL 1807788, at 17 (Phila. C.C.P., Mar. 15, 2001). In this case the plaintiffs argue that the individual defendants were acting in their own interests by attempting to "cover up" the Mucomyst mishap (exception 1), and also that one of the alleged co-conspirators, Sabrina Logan M.D., is an employee of CHOP[10] (exception 2). We believe that exceptions 1 and 2 are supported by the allegations of the complaint.

---

10. Complaint, ¶9.

Nevertheless, the complaint fails to state a cause of action for conspiracy because it does not aver any overt act on the part of a defendant to further the alleged common purpose. It is not enough to allege that the defendants agreed not to report the Mucomyst mishap as part of a conspiracy to conceal the mistake. The requirement of an overt act is an essential part of conspiracy law. *Goldstein,* 854 A.2d at 590. An agreement to conceal may be the basis for a conspiracy claim, but only where there has been an overt act to cover up or conceal. For example, when the Watergate co-conspirators shredded or "deep-sixed" documents, these were overt acts aimed at furthering their common purpose of concealment. The complaint does not aver any overt act to cover-up or conceal in this case. For this reason, Count II for civil conspiracy must be dismissed.

### E. Motion To Strike (Demurrer) for Failure To State a Claim or Assert Elements Necessary To Sustain a Claim for Punitive Damages

Count VII of the complaint is a claim for punitive damages. The plaintiffs also have included a claim for such damages in the ad damnum clauses of Counts I, II, V and VI. In a proper case punitive damages can be recovered, but there is no separate cause of action for punitive damages in Pennsylvania; it is only an element of damages. *Kirkbride v. Lisbon Contractors Inc.,* 521 Pa. 97, 101, 555 A.2d 800, 802 (1989). Therefore, Count VII must be dismissed. Since Counts I and II have already been dismissed, we need not address the issue of punitive damages further except with regard to Counts V and VI, the survival actions on behalf of Meredith's estate.

Punitive damages are awarded in order to punish an individual for wrongful behavior. *SHV Coal Inc. v. Continental Grain Co.,* 526 Pa. 489, 493, 587 A.2d 702, 704 (1991). The wrongful behavior must be outrageous "because of the defendant's evil motive or his reckless indifference to the rights of others." Restatement (Second) of Torts §908(2); see *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984). Reckless indifference to the rights of others is more than mere negligence or even gross negligence. It is defined in section 500 of the Restatement (Second) of Torts (1965) as follows:

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

In this case we cannot determine from the complaint alone whether the alleged administration of Mucomyst into Meredith's endotracheal tube constituted reckless indifference to Meredith's rights. A fuller development of the factual record is necessary before we can properly rule on this issue. Therefore, we decline to dismiss the punitive damage claims in Count V and VI at this juncture.

F. Motion To Strike (Demurrer) to Plaintiffs'
Claims of Reckless Conduct and Plaintiffs'
Use of Impertinent Language Pursuant to
Pa.R.C.P. 1028(a)(2)

The defendants request that this court strike claims of reckless and outrageous conduct in paragraphs 51, 61,

64, 73, 90, 95, 101, 102, 128 and 129 of the complaint. They contend that the allegations amount to impertinent language. We disagree. Because we have permitted the claim for punitive damages in Count V to proceed, the allegations in these paragraphs may be relevant. Accordingly, the defendants' objection is overruled.

G. Motion To Strike Vague Allegations of Negligence

We believe the allegations of negligence are sufficiently specific to apprise the defendants of the plaintiffs' claims. Further details can be obtained through discovery. Hence, this objection is overruled.

II. *The Preliminary Objections of Defendants Brian D. Allen R.N. and/or B.D.A., R.N., Joseph Fassl M.D., William Sotack D.O., Lehigh Valley Physician Group, Lehigh Valley Hospital and Lehigh Valley Health Network*

A. Motion To Strike (Demurrer) to
Plaintiffs' Claims Under EMTALA

The plaintiffs allege that the corporate defendants violated the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. §1395dd et seq., in the transfer of Meredith to CHOP. EMTALA was enacted to prevent hospitals from "dumping" emergency patients who are unable to pay for medical services, until after their emergency medical condition has been stabilized. The Act applies only to hospitals and not to any of the individual defendants.

The corporate defendants argue that EMTALA does not apply at all to the instant case because Meredith was

not "dumped" at CHOP. Meredith was transferred to CHOP on an emergency basis for purposes of a liver transplant. However, the plaintiffs' allegation is not that Meredith was "dumped," but that LVH was obligated under EMTALA to provide CHOP with a medical record for Meredith that accurately reflected the care she had received at LVH. Instead, the information provided to CHOP omitted the erroneous administration of Mucomyst. The plaintiffs argue that as a result of this omission, Meredith was suffering from a serious undisclosed condition when she was transferred to CHOP and that this made it more difficult for CHOP to treat her.

The plaintiffs rely on section 1395dd(c) of EMTALA, which governs the transfer of an unstable patient with an emergency medical condition. Such a transfer may only occur when (1) the patient, or her representative, requests a transfer in writing to another medical facility after being informed of the hospital's obligations under EMTALA and the risks of transfer; and (2) a physician, or other qualified person, has certified that the medical benefits of the transfer outweigh the risks; and (3) the transfer is appropriate.[11] An appropriate transfer to a medical facility is defined by the Act as a transfer

"*(A)* in which the transferring hospital provides the medical treatment within its capacity which minimizes the risks to the individual's health and, in the case of a woman in labor, the health of the unborn child;

"*(B)* in which the receiving facility—

"*(i)* has available space and qualified personnel for the treatment of the individual, and

---

11. 42 U.S.C. §1395dd(c)(1).

"*(ii)* has agreed to accept transfer of the individual and to provide appropriate medical treatment;

"*(C)* in which the transferring hospital sends to the receiving facility all medical records (or copies thereof), related to the emergency condition for which the individual has presented, *available at the time of the transfer,* including records related to the individual's emergency medical condition, observations of signs or symptoms, preliminary diagnosis, *treatment provided,* results of any tests and the informed written consent or certification (or copy thereof) provided under paragraph (1)(A), and the name and address of any on-call physician (described in subsection (d)(1)(C) of this section) who has refused or failed to appear within a reasonable time to provide necessary stabilizing treatment;

"*(D)* in which the transfer is effected through qualified personnel and transportation equipment, as required including the use of necessary and medically appropriate life support measures during the transfer; and

"*(E)* which meets such other requirements as the secretary may find necessary in the interest of the health and safety of individuals transferred."[12]

Here, the complaint alleges in paragraphs 63, 64, 65, 66, 67, 68, 71 and 72 that the Mucomyst mishap was not recorded in Meredith's medical chart until February 17, 2004, two days after the event had occurred and after Meredith had already been transferred to CHOP. Thus, according to the complaint, the medical records provided to CHOP at the time of Meredith's transfer were incomplete.

---

12. 42 U.S.C. §1395dd(2). (emphasis added)

An incomplete medical record, however, is not in and of itself a violation of EMTALA. Under EMTALA, at section 1395dd(2)(C), a transferor hospital is required to provide to the transferee only the medical records that were "available at the time of the transfer." The plaintiffs acknowledge in their complaint that the misadministration of Mucomyst was not recorded by the participants in any of Meredith's medical records at the time of her transfer to CHOP. EMTALA does not contain a requirement that the medical records given to the transferee hospital accurately reflect all the medical treatment provided to the patient by the transferor hospital. The transferor hospital is only required to provide all medical records that are *available* at the time of the transfer. For this reason, the plaintiffs' EMTALA claim must fail, and the allegations pertaining to this claim are stricken.

### B. Motion To Strike (Demurrer) Regarding JCAHO Standards

The Joint Commission for Accreditation of Healthcare Organizations (JCAHO) is an organization that establishes standards for the quality of services provided by hospitals. The plaintiffs allege that the corporate defendants were negligent in failing to adhere to JCAHO standards in the care provided to Meredith. The corporate defendants dispute the relevance of JCAHO standards to medical malpractice actions. They point out that membership in JCAHO is voluntary, and that although LVH is a member, many hospitals are not.

No appellate court in Pennsylvania has addressed the issue whether JCAHO standards should be adopted as the standard of care for hospitals. The United States

District Court for the Middle District of Pennsylvania in *Wey v. Evangelica Community Hospital,* 833 F. Supp. 453, 463 (M.D. Pa. 1993), considered the application of JCAHO standards to a non-member hospital sued under EMTALA. The *Wey* court held that JCAHO standards had no application because JCAHO is a voluntary organization and the hospital-defendant was not a member. Our distinguished colleague, the Honorable Lawrence J. Brenner, followed *Wey* in rejecting the application of JCAHO standards in a medical malpractice action, but his footnoted order does not indicate whether the defendant hospital was a member of JCAHO. *Houdershieldt v. St. Lukes Hospital,* no. 2005-C-3318V (Lehigh Cty., March 8, 2006). A different view was expressed by the Supreme Court of Washington in *Pedroza v. Bryant,* 677 P.2d 166, 171 (1984), where the court stated in dicta that reference to JCAHO standards is a method to establish the standard of care applicable to a hospital.

In this case we are advised by counsel that LVH is a member of JCAHO. That being so, we believe that evidence of JCAHO standards may be relevant in determining the appropriate standard of care for LVH, just as the hospital's internal policies are relevant. By affiliating with JCAHO, LVH may have voluntarily assumed an obligation to comply with JCAHO standards for the quality of services provided to patients. Without a factual record on this point we are unable to determine this issue. Thus, at this juncture we decline to strike the references to JCAHO from the complaint.

We hasten to add, though, that while the violation of a JCAHO standard may be relevant, it would not constitute negligence per se. The parties need not accept the JCAHO standards as the only standards of care against

which the actions of LVH are to be measured. The parties are free to present other evidence with respect to the standard of care.

### C. Motion To Strike (Demurrer) Plaintiffs' Claims of Civil Conspiracy

For the reasons we set forth above,[13] we believe the allegations in the complaint are insufficient to support a claim of civil conspiracy. Accordingly, the objection in the nature of a demurrer to the civil conspiracy claim in Count II is sustained.

### D. Motion To Strike (Demurrer) Plaintiffs' Claims for Negligent and Intentional Infliction of Emotional Distress

In Count I of the complaint the plaintiffs seek to recover for their emotional distress. The moving defendants seek the dismissal of this claim as a matter of law. For the reasons stated above,[14] the demurrer to Count I must be sustained and this count dismissed.

### E. Motion To Strike Claims for Punitive Damages

The moving defendants request that the plaintiffs' claim for punitive damages be stricken. We decline to do so at this stage of the case for the reasons set forth above.[15]

### F. Motion To Strike Allegations of Negligence for Lack of Specificity

This motion is denied for the reasons stated above.[16]

---

13. *Supra* at 10.
14. *Supra* at 6, 7.
15. *Supra* at 12.
16. *Supra* at 13.

## ORDER

Now, September 26, 2006, upon consideration of the preliminary objections of Brian D. Allen R.N. and/or B.D.A. R.N., Joseph Fassl M.D., William Sotack D.O., Lehigh Valley Physician Group, Lehigh Valley Hospital and Lehigh Valley Health Network, to plaintiffs' second amended complaint, after review of the parties' briefs and oral argument, and for the reasons set forth in the accompanying opinion, it is ordered as follows:

(1) The preliminary objection in the nature of a motion to strike (demurrer) with respect to claims for violation of EMTALA is sustained. All references to EMTALA and "dumping" are stricken from the second amended complaint.

(2) The preliminary objection in the nature of a motion to strike (demurrer) with respect to claims for violation of standards set forth by the Joint Commission for Accreditation of Health Care Organization is overruled.

(3) The preliminary objection in the nature of a motion to strike (demurrer) with respect to Count II for civil conspiracy is sustained. Count II is dismissed.

(4) The preliminary objection in the nature of a motion to strike (demurrer) with respect to claims of emotional distress in Count I and paragraphs 52, 93, 95 and 128 is sustained. Count I is dismissed and paragraphs 52, 93, 95 and 128 are stricken from the second amended complaint.

(5) The preliminary objection in the nature of a motion to strike impertinent language and claims for punitive damages contained in Count VII, the ad damnum clauses of Counts I, II, V, VI and VII, and paragraphs 51, 61, 64,

73, 90, 95, 101, 102, 128 and 129 is sustained in part and overruled in part. The objection is sustained as to Count VII, and Count VII is stricken from the second amended complaint. The objection is overruled as to the ad damnum clauses of Counts V and VI and paragraphs 51, 61, 64, 73, 90, 95, 101, 102, 128 and 129. The objection to the ad damnum clauses of Counts I and II is moot since these counts have been dismissed.

(6) The preliminary objection in the nature of a motion to strike paragraphs 15, 22, 62, 72, 91, 100, 123, 125(f), 125(g), 125(h), 125(i) and 125(j) for lack of specificity is overruled.

It is further ordered that plaintiffs shall file a third amended complaint consistent herewith within 20 days from the date of this order.

## ORDER

Now, September 26, 2006, upon consideration of the preliminary objections of Sabrina Logan M.D. and Kerrie Pinkney M.D. to plaintiffs' second amended complaint, after review of the parties' briefs and oral argument, and for the reasons set forth in the accompanying opinion, it is ordered as follows:

(1) The preliminary objection in the nature of a motion to strike the claim for loss of a child's consortium is sustained. References to loss of the child's companionship, relationship, society, comfort, guidance, solace or protection are stricken from paragraphs 96, 97 and 98.

(2) The preliminary objection in the nature of a motion to strike (demurrer) with respect to the claim for negligent and intentional infliction of emotional distress in Count I and paragraphs 52, 93, 95 and 128 is sustained. Count I

of the second amended complaint is dismissed and paragraphs 52, 93, 95 and 128 are stricken.

(3) The preliminary objection in the nature of a motion to strike (demurrer) with respect to claims of civil conspiracy in Count II and paragraph 61 is sustained. Count II of the second amended complaint is dismissed and paragraph 61 is stricken.

(4) The preliminary objection in the nature of a motion to strike (demurrer) with respect to claims for punitive damages in Count VII and the ad damnum clauses of Counts I, II, V, VI and VII, is sustained in part and overruled in part. The objection is sustained as to Count VII, and Count VII is stricken from the second amended complaint. The objection is overruled as to any claims for punitive damages contained in the ad damnum clauses of Counts V and VI. The objection to the ad damnum clauses of Counts I and II is moot since these counts have been dismissed.

(5) The preliminary objection in the nature of a motion to strike (demurrer) with respect to allegations of reckless conduct and use of impertinent language in paragraphs 51, 61, 64, 73, 90, 95, 101, 102, 128 and 129 is overruled.

(6) The preliminary objection in the nature of a motion to strike for lack of specificity in paragraphs 62, 72, 91, 101, 101(i), 101(s) is overruled.

It is further ordered that plaintiffs shall file a third amended complaint consistent herewith within 20 days from the date of this order.