Jane **BANNAR**, Betty S. Carter, Joseph S. Carter, Reuben H. Close, Daniel S. Collmann, John Corry, Charles D. Edwards, David H. Fulford, Robert S. Fulford, William T.M. Johnson, Eliza B. Lewis, Lloyd W. Lewis, Harold F. Read, Jr.,

---

Helen Read,: H. Fred Read, III, Katharine B.: Sax, W. Peter Sax, Geraldine Seymour, Steven D. Seymour, Joseph D. Walsh, Marilyn P. Walsh, Patrick L. Walsh, Elaine Weimer, George Weimer, And Robert J. Williams

v.

Harry D. MILLER, Jr., Jean Miller, Harry D. Miller, Iii, Paul A. Logan, Brownstone Inn, Inc., And Powell, Trachtman, Logan & Liddle, A Professional Corporation.

Appeal of Harry D. MILLER, III

Superior Court of Pennsylvania.

Argued Dec. 19, 1996.

Filed Aug. 27, 1997.

Reargument Denied Nov. 7, 1997.

Curtis P. Cheyney, III, Philadelphia, for appellant.

Garland D. Cherry, Sr., Media, for Jane Bannar, etc., appellees.

Before EAKIN, SCHILLER and
MONTEMURO *, JJ.

EAKIN, Judge.

In 1956, Harry Miller Jr. began operating a septic business on a farm he and his wife owned in Thornbury Township. In 1975, he sold the business to his son, Harry Miller III, who also operated a portable toilet business and Christmas tree farm from the site. The Pennsylvania Department of Environmental Resources ("DER")[1] issued him a permit which allowed him to fertilize the trees with the sewage from the septic business.

Harry Miller Jr. and Jean Miller owned a restaurant, the Brownstone Inn, approximately 1/2 mile from the farm, which they operated from 1974 until 1992. Harry Miller Jr. and Harry Miller III stored portable toilets and empty propane tanks on a portion of the Inn's lot.

Neighboring township residents expressed concern over the environmental and personal impact of these businesses on the health, safety and welfare of their community as a whole. The residents complained to the township, DER, and the Environmental Protection Agency about foul odors, pollution, and possible violations of the DER permit. DER issued citations to Harry Miller III for violations of the terms of the permit.

On May 15, 1988, one group of residents decided to air their frustration by picketing the Inn. On May 20, 1988, the Millers were granted an injunction limiting the picketing to areas 300 feet or more from the Inn. In December 1988, the residents also began picketing Harry Miller III's tree farm. An injunction limiting these picketers was granted December 16, 1988.

Picketing continued at the Inn every Sunday for over one and one-half years. During this time, the picketers carried signs claiming the Millers were dumping sewage at the site and urging the public not to patronize the Inn; these residents became known as the Grist Mill Area Conservancy ("GMAC").

On December 23, 1988, Harry Miller Jr., Jean Miller, Harry Miller III, and the Brownstone Inn filed a civil suit against GMAC and others. The suit alleged twenty-eight presumed members of the GMAC, as individuals and as members of that association, were liable to the Millers and the Inn for defamation, injurious falsehood, invasion of privacy, interference with contractual relations, nuisance, outrageous conduct, and conspiracy. The Millers demanded compensatory damages for loss of income at the Inn and diminution in property value in the amount of $1 million for each count as well as punitive damages in the amount of $1 million from each individual named in the suit for each count.

In February 1988, defendants filed preliminary objections to strike the damages portion of the complaint as violative of the Pennsylvania Rules of Civil Procedure. In May 1988, default judgment was entered in favor of the Millers and against GMAC for failure to answer the complaint; the action was later reopened because preliminary objections remained outstanding. In February 1990, the residents served the Millers with interrogatories requesting the factual basis of the allegations in the complaints. The Millers did not respond to the interrogatories and on June 15, 1990, the preliminary objections were granted. On July 10, 1990, the Millers agreed to discontinue the suit as to all individual residents, leaving only GMAC in the litigation.

In November 1990, the individuals named as defendants in the Millers' suit sued Harry Miller Jr., Jean Miller, the Brownstone Inn, Inc., Harry D. Miller, III, and the attorney who represented them and his firm. This action was pursuant to the Dragonetti Act, 42 Pa.C.S. § 8351, and alleged the Millers' suit was filed without probable cause and for a wrongful purpose.

On October 6, 1992, on the eve of trial, the Millers withdrew the remains of their action against GMAC.

A jury trial commenced on the Dragonetti action on June 28, 1993. The jury returned a

---

* Retired Justice assigned to Superior Court.

1. In 1996, the Department of Environmental Resources became known as the Department of Environmental Protection ("DEP").

verdict awarding twenty-four appellees $5,000 each; one, David Fulford, received $10,000. Each appellee was awarded punitive damages as follows: $2,000 each against Harry Miller Jr.; $2,000 each against Jean Miller; $100 each against the Brownstone Inn, Inc.; and $10,000 each against Harry Miller III.

All parties filed post-trial motions for relief. Appellees filed a post-trial motion arguing the trial court improperly failed to submit to the jury the issue of punitive damages against the attorney and his firm. By order entered February 22, 1995, the trial court denied all motions for post-trial relief.

Timely appeals were filed with this Court in three different groups; Harry Miller III appeals herein; the attorney and law firm appeal together; and Harry Miller Jr., Jean Miller, and the Brownstone Inn, Inc. appeal together. Although each appeal was filed separately, they arise from common facts and share the same original record.

Harry Miller III presents six issues for our review: (1) whether the trial court erred by finding no probable cause existed for his suits against GMAC and the individual appellees; (2) whether the evidence was insufficient to support the verdict; (3) whether the verdict was against the weight of the evidence; (4) whether the jury instructions on the elements of wrongful use of civil proceedings and civil conspiracy were erroneous; (5) whether the trial court erred by allowing evidence which was irrelevant to the cause of action and prejudicial to Mr. Miller; and (6) whether instructions to the jury on the issue of punitive damages were erroneous.

Appellant first contends he should receive a new trial because probable cause existed as a matter of law under the Dragonetti Act.

The Dragonetti Act permits one who is sued without probable cause to sue the original plaintiff in turn; the latter may defend by showing that probable cause for the original suit did exist. The Act provides the basis upon which an individual will be able to establish probable cause for the original action:

§ 8352. Existence of probable cause.

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

(1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S. § 8352.

Appellant contends he established probable cause because (1) injunctions had been issued restricting the picketing activities; (2) the messages on the signs carried by the picketers were defamatory; and (3) he made full disclosure of all relevant facts to his attorney. The trial court correctly notes these contentions concerning the existence of probable cause are "founded upon [his] subjective interpretation of the evidence and as the record amply reflects, dispute concerning the facts in this matter abounds." (Trial Court Opinion at 11).

■ Grant of the injunction certainly shows Mr. Miller had probable cause to sue for an *injunction*, but does not show that probable cause existed for the huge damages he sought in the causes of actions pleaded in *Miller v. GMAC*. The injunctive action is irrelevant.

■ Appellant contends probable cause existed as the picketers' signs amounted to defamation *per se*. The trial court's opinion sets forth a thorough analysis of the elements required to establish a cause of action based on defamation and concluded it could not as a matter of law find such a cause of action existed, or that appellant had sufficient probable cause to bring an action for defamation:

It is clear from the evidence that Defendant could not have established extreme and irrefutable losses and abuse of the free speech privilege from the picketers' publications which were made in the public interest. It is also clear that he was dilatory in pursuing and ultimately abandoned the pursuit of such damages by way of civil action. It is also clear from the evidence presented at trial that, at best, possibly three signs contained any material that might be considered defamatory. However, references to these were tainted by vague recollections of defense witnesses regarding what may have been seen and who may have been responsible, and by blurred photographs of signs and carriers taken at the scene. The jury could very well have concluded that the Defendant was mistaken as to persons or language.

(Trial Court Opinion at 18–19). We find nothing in this with which we disagree.

■ Appellant also claims the issue of probable cause should not have gone to the jury because he had a reasonable belief in the degree of probable cause only if a reasonable suspicion exists, supported by circumstances which would enable an ordinarily prudent person in the same situation to believe a claim was valid. The objective reasonableness for that belief is for the jury, which is free to accept all, part, or none of the Defendant's evidence in assessing credibility. *Miller v. Pennsylvania R.R.*, 371 Pa. 308, 89 A.2d 809 (1952).

■ Mere claims of reliance on one's lawyer does not insulate one from liability for an unfounded lawsuit. This record does not support appellant's suggestion that his attorney's agreement to draft and file the suit insulates him from facing the question of whether he had probable cause for the suit. The decade of litigation shows appellant was no neophyte, swept away by an overzealous counsel. The trial court correctly considered the evidence in the light most favorable to appellees and found "ample evidence" that appellant himself lacked probable cause, despite his claims of reasonableness. The issue properly went to the jury, and no reason exists to undo that submission.

Appellant next argues the evidence was insufficient to support the jury's verdict. Specifically, he claims that he fully disclosed all relevant facts to his attorneys, sought and reasonably relied on their advice, and believed he had probable cause to initiate the underlying action.

■ When reviewing the sufficiency of the evidence, this Court must determine whether the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the verdict winner, was sufficient to enable the factfinder to find against the losing party. *Reichman v. Wallach*, 306 Pa.Super. 177, 452 A.2d 501 (1982). Upon a thorough review of the record, we find his sufficiency claim without merit.

■ To succeed in a cause of action for wrongful use of civil proceedings, 42 Pa.C.S. § 8351(a), a plaintiff must allege and prove the following three elements: (1) that the underlying proceedings were terminated in their favor; (2) that defendants caused those proceedings to be instituted without probable cause; and (3) that the proceedings were instituted for an improper purpose. *Hart v. O'Malley*, 436 Pa.Super. 151, 160–61, 647 A.2d 542, 547 (1994), *aff'd*, 544 Pa. 315, 676 A.2d 222 (1996) (citing *Kelly–Springfield Tire Co. v. D'Ambro*, 408 Pa.Super. 301, 596 A.2d 867 (1991)); *Shaffer v. Stewart*, 326 Pa.Super. 135, 140, 473 A.2d 1017, 1020 (1984).

■ As our discussion above indicates, we have already found that appellant lacked probable cause and that he was not insulated from liability because he relied on his attorneys. Thus, we need only determine whether the original action was terminated in favor of appellees and was instituted for an improper purpose. "Whether withdrawal or abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought ... depends on the circumstances under which the proceedings are withdrawn." *Rosenfield v. Pennsylvania Auto. Ins. Plan*, 431 Pa.Super. 383, 389, 636 A.2d 1138 (1994) (quoting *Restatement (Second) of Torts* § 674 cmt. j (1977)).

The Millers served a Complaint on appellees, who filed Preliminary Objections. Appellees also served interrogatories upon the Millers. Instead of having their clients respond to the interrogatories, the Millers' attorneys caused a default judgment to be entered in May 1988 for GMAC's failure to answer the Complaint; the default judgment was opened because Preliminary Objections were outstanding.

The court allowed an Amended Complaint to be filed if the *ad damnum* clauses were corrected; the attorneys never had the Millers file an Amended Complaint. The individual defendants were voluntarily dismissed, but the action against GMAC was scheduled for trial in October 1992. Only on the very day of trial, when the matter was called, did the Millers in open court request permission to withdraw the action against GMAC.

These factual circumstances lead to a determination that the voluntary dismissal constitutes a final determination in favor of the persons against whom the proceedings were brought; they tend to establish neither appellant nor his attorney were attempting to properly adjudicate the claim. A last-second dismissal in the face of imminent defeat is not favorable to appellant. The Millers did not answer the bell in the fight they started, which is a victory for the other side.

■ As to whether appellant had an improper purpose in instituting proceeding, there was evidence that appellant's attorneys had represented the Millers in various legal matters since 1981. The attorneys were aware of Harry Miller Jr.'s conviction for violating a zoning ordinance, and knew of the numerous citations issued by Thornbury Township and DER. The complaint the attorneys drafted, however, was directly contrary to this knowledge.

The record further shows that appellant filed suit on behalf Darlene Miller, whose deposition testimony was read at trial, stated she had never been consulted about filing the lawsuit, about the discontinuation of the suit, or about any damages she may have sustained. Nevertheless, appellant included her, sought damages in her name, and neglected her input when the suit was withdrawn.

There was also testimony about the choice of defendants named in the suit. Particularly, appellant's attorneys were informed one of the named defendants had not participated in the picketing or other activities; the attorneys failed to investigate this matter and continued the multi-million dollar suit against this particular defendant. Conversely, the attorneys did not name some of the other persons who *did* picket the Millers' properties. The jury could easily conclude appellant and his attorneys treated the picketing citizens as fungible, a reckless attitude at best for both an officer of the court and his client.

Moreover, appellant's attorneys drafted a complaint that pleaded damages in excess of $1 million compensatory and $1 million punitive damages for each named defendant on each count. Not only is this clearly in violation of the Pennsylvania Rules of Civil Procedure, but it bespeaks a settled purpose of frightening the dickens out of citizens exercising their constitutional rights.

Clearly, this trial presented issues of probable cause, gross negligence, and improper purpose. The court properly submitted these contested factual issues to the jury, which apportioned credibility to each side's witnesses and determined that appellant wrongfully used civil proceedings to prevent appellees from exercising their rights under the First Amendment rights. There can be no contention the evidence was insufficient to sustain the jury's findings, especially when viewed in the light most favorable to the verdict winner.

■ Appellant also contends the jury's verdict was against the weight of the evidence. In reviewing whether the trial court erred in not granting a new trial, we must consider all of the evidence and only when the verdict is so contrary to the evidence that it shocks one's sense of justice should a new trial be granted. *Barrack v. Kolea*, 438 Pa.Super. 11, 651 A.2d 149 (1994), *alloc. denied*, 542 Pa. 671, 668 A.2d 1134 (1995). We will not reverse the decision of the trial court in refusing to grant a new trial unless there has been a clear abuse of discretion or an error of law determinative to the

outcome of the case. *Spang & Co. v. United States Steel Corp.*, 519 Pa. 14, 545 A.2d 861 (1988). Upon review of the evidence, we find the trial court did not err in refusing to grant a new trial.

Appellant next argues the trial court erroneously charged the jury on the elements of a claim for wrongful use of civil proceedings and the elements of civil conspiracy.

When examining jury instructions, our scope of review is to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. *Williams v. Philadelphia Transp. Co.*, 415 Pa. 370, 374, 203 A.2d 665, 668 (1964). "Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead of confuse rather than clarify a material issue." *Stewart v. Motts*, 539 Pa. 596, 606, 654 A.2d 535, 540 (1995) (quoting *Glider v. Com. Dept. of Hwys.*, 435 Pa. 140, 151–52, 255 A.2d 542, 547 (1969)). A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." *Id.* (quoting *Voitasefski v. Pittsburgh Rys. Co.*, 363 Pa. 220, 226, 69 A.2d 370, 373 (1949)). When reviewing a charge to the jury, we will not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety. *McCay v. Philadelphia Elec. Co.*, 447 Pa. 490, 499, 291 A.2d 759, 763 (1972).

The trial court instructed the jury that appellees would satisfy their burden if they proved Mr. Miller acted in "a grossly negligent manner *or* without probable cause when bringing the underlying cause of action." (N.T. 27) Appellant contends the instruction should be "and," not "or," but offers no authority for this position.

The Act provides as follows:
(a) Elements of the Action.—A person . . . is subject to liability to the other for wrongful use of civil proceedings:
(1) He acts in a grossly negligent manner *or* without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351(a)(1), (2) (emphasis added). The trial court's instructions to the jury could not have been clearer; they were taken directly from the language of the Act. The jury was not palpably misled by this, nor were the instructions confusing. No error may be attributed to the trial court on this issue.

Appellant further claims the trial court erroneously charged the jury in the areas of civil conspiracy, agency, and with respect to the zoning laws of Thornbury Township.

With regard to civil conspiracy, appellant argues an instruction on this cause of action should never had been read to the jury since appellees had allegedly withdrawn their claim on that issue. The confusion was compounded during a sidebar conference which took place as the trial court had begun to read to the jury the instructions for civil conspiracy:

MR. BRAUNFIELD [Attorney for Mr. Miller, III]: Excuse me your honor. I know this is a bad thing to do, but I think we need to remind you of something at this point.

THE COURT: I don't know that Plaintiff has withdrawn it. Have you Mr. Cherry [Attorney for appellees]? Have you withdrawn your theory of civil conspiracy?

MR. CHERRY: Yes, we did Your Honor.

MR. BRAUNFIELD: It was withdrawn in Chambers.

THE COURT: Well, I think what was withdrawn was that it was a separate count on the verdict slip. And that specifically was what was under discussion when we were determining the issue of civil conspiracy. If Mr. Cherry withdraws it, that's fine.

MR. CHERRY: I have withdrawn it.

THE COURT: I thought not. All right.

MR. BRAUNFIELD: Sorry.

(N.T. 66–7).

In its opinion, the trial court offers the following conclusion about the meaning of the above exchange:

> It was the Court's understanding, and the Plaintiffs', as well, that the request and consequent discussion concerned only the verdict slip, and did not reflect upon the Court's instructions generally. The Plaintiffs did plead a cause in [sic] Civil Conspiracy against these Defendants, and therefore, the Court inquired whether Plaintiffs were pursuing that as an independent cause of action, which would necessitate an independent interrogatory on the verdict slip.

(Trial Court Opinion at 34).

A review of the record indicates that appellant did not preserve this issue or make a record contrary to the trial court's recollection. He made neither a specific nor general objection to appellant has waived the issue. Further, as conspiracy was not reflected on the verdict slip, the jury was incapable of returning a verdict on that count; if error, and if not waived, the error is harmless.

 Next, appellant contends the court erred with respect to its instruction on the law of agency. Appellant's operations manager, Norman Field, dressed in appellant's Santa suit, served appellees with uncertified copies of the multimillion dollar lawsuit at their houses two days before Christmas in 1988. One of the issues in the underlying action was whether Mr. Field was acting on his own or under the direction or control of appellant; appellant contends there was no evidence Mr. Field was acting as his agent and, thus, no instruction on agency should have been given. However, appellant himself testified that on the date of the "Santa service" he owned the Santa suit, Mr. Field was his employee, and he never gave any consideration as to whether Field was serving the complaints on company time. (N.T. 184, 29–33). Under these facts, the sincerity of appellant's disbelief in Santa's visit was for the jury. As it was not error for the trial court to give this issue to the jury, the court was required to instruct on the issue of agency.

 Appellant next argues the trial court erred by charging the jury on the issue of zoning ordinances. As no objection to the charge was made in any form at trial, the issue is waived.

 In his fifth issue, appellant contends the trial court erred when it admitted evidence about previous litigation in which he was a party. In seeking to prove appellant lacked probable cause to bring his action, appellees offered evidence he had violated Thornbury Township zoning regulations and that DEP had issued citations for his property. (N.T. 93–4) Appellant's original complaint averred his business operations were conducted in full compliance with the law. We agree with the trial court's rationale for admitting this evidence:

> The evidence of noncompliance with Township Zoning Ordinances and the laws and regulations of the state and federal environmental schemes is also relevant to the jury's consideration of Defendant's claimed reasonable belief in the facts giving rise to the underlying litigation. The Defendant's state of mind at the time the underlying litigation was filed is also relevant, since the Defendant's intent and motive are issues that clearly need to be considered when the factfinder determines probable cause and punitive damages.

(Trial Court Opinion at 29).

 Lastly, appellant contends the trial court erred by erroneously describing to the jury what conduct could be considered when imposing punitive damages.

The trial court's charge indicated punitive damages must only be awarded if the defendant's conduct was outrageous. The court instructed the jurors that outrageous conduct is committed with bad motive or a reckless indifference to the rights of others. Such a charge is consistent with the Restatement (Second) of Torts § 908(2), adopted in Pennsylvania in *Feld v. Merriam*, 506 Pa. 383, 395, 485 A.2d 742, 747 (1984).

 Further, the evidence is sufficient to support an awarding of punitive

damages against appellant. "It is well settled that punitive damages will lie only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others." *Takes v. Metropolitan Edison Co.*, 440 Pa.Super. 101, 117, 655 A.2d 138, 146 (1995), *alloc. granted,* 544 Pa. 595, 679 A.2d 225 (1996) (quoting *Feld v. Merriam*, 506 Pa. 383, 395, 485 A.2d 742, 747 (1984)). Punitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct. *SHV Coal v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702 (1991).

The record is replete with evidence of conduct which the jury could properly conclude evinced bad motive or a reckless indifference to the rights of others. Such conduct included: (1) appellant's initiation and continuation of the underlying lawsuit against appellees despite his knowledge of factual inaccuracies in the pleadings; (2) appellant's conduct in filing the suit on behalf of Darlene Miller without her knowledge or consent; (3) pleading compensatory and punitive damages in excess of $1 million; and (4) the Santa Claus service. The evidence in support of the jury verdict is ample and appellant's contention to the contrary is without merit.

Order affirmed.