**Winner Logistics Inc. v. Labor and Logistics Inc.**

*Thomas More Marrone* and *Thomas Martin,* for plaintiff.

*John J. Murphy III, Heather M. Tashman, Thomas J. Cole Jr., Christopher P. Zubowicz,* and *William C. Root,* for defendants Labor & Logistics Inc. and Curtis Ball.

*Arthur W. Lefco, Douglas E. Herman,* and *Jonathan E. Cross,* for defendants Joseph A. Bubba, Nancy Conrad and Fitzpatrick Lentz & Bubba PC.

BERNSTEIN, *J.,* March 29, 2011—This is an action

for wrongful use of civil proceedings[1] filed by plaintiff Winner Logistics, Inc. (hereinafter "plaintiff" or "Winner Logistics") against attorneys Joseph A. Bubba and Nancy Conrad and their firm Fitzpatrick, Lentz & Bubba, P.C. (hereinafter "attorney defendants"). The attorney defendants represented Labor & Logistics Management, Inc. and its president, Curtis Ball,[2] in an action against their former employee David Wallover and his new employer Winner Logistics for misappropriation of trade secrets and breach of a restrictive covenant. Winner Logistics is a competing company formed by Wallover after he left Labor & Logistics Management Inc.

Labor & Logistics Management, Inc. is in the driver leasing business, providing commercial truck drivers to shippers on a temporary or ad hoc basis. In September 2000, Labor & Logistics Management, Inc. hired Wallover as a driver lease manager with access to Labor & Logistics customer, prospective customer and driver lists. When Wallover was hired, he was not asked to and did not sign any restrictive covenant when he started to work. In July 2002, Ball recognized that he did not have a signed employment agreement with Wallover and directed Wallover's supervisor to have him sign one. Wallover refused and he was fired.

Thereafter, Wallover started his own business which competed with Labor & Logistics Management, Inc. Ball and Labor Logistics retained Joseph Bubba and Nancy Conrad and their law firm Fitzpatrick, Lentz & Bubba, P.C. (hereinafter "attorney defendants") to represent

---

1. 42 Pa. C.S. § 8351-8355.
2. Labor & Logistics Management, Inc. and Curtis Ball were defe - dants in this action but settled with the plaintiff prior to trial.

them in an action for misappropriation of trade secrets and breach of restrictive covenant against Wallover and Winner Logistics, which was filed in Bucks County.

On December 2, 2002, the attorney defendants filed a complaint in the Court of Common Pleas of Bucks County and a motion for emergency injunctive relief on behalf of Ball and Labor Logistics. The complaint alleged claims for breach of contract, tortious interference with contractual relations and prospective relations, misappropriation of trade secrets, breach of fiduciary duty and unfair trade practices.

On December 13, 2004, a non jury trial was held before the honorable John J. Rufe. Judge Rufe found no restrictive covenant existed because Wallover "never executed a written contract of employment with plaintiff LLM and never agreed orally not to compete with LLM in the event of his termination of employment with LLM."[3] He also held that "Wallover is not prohibited by written or oral contract from engaging in business in direct competition with" LLM, "documents wholly or substantially copied or duplicated from [LLM]'s forms and documents do not constitute trade secrets subject to employee confidentiality, as the same were easily obtainable in the open market or could be easily created."

Despite the foregoing rulings, on January 24, 2005, Judge Rufe enjoined Winner Logistics and Wallover from contacting LLM's former customers. Winner Logistics and Wallover appealed the ruling. The Superior Court stayed

---

3. *Labor & Logistics. Inc. v. Winner Logistics. Inc.*, 02-07933, Court of Common Pleas of Bucks County, memorandum opinion and order no. p.1.

enforcement of the injunction and subsequently reversed the trial court's ruling. The Superior Court said, "our established precedent is clear that the type of information contained in LLM's customer lists does not qualify as trade secrets." The Superior Court explained that "an employee is free to take with him, when he leaves an employer, such information about the customers of the employer as he remembers."[4] Because Wallover only contacted customers he remembered from his time at LLM, the Superior Court found that Wallover did not misappropriate any customer list when he left LLM. An "employee, upon terminating his employment relationship with his employer, is entitled to take with him 'the experience, knowledge, memory, and skill, which he gained while there employed...'"[5] When leaving one company for another, an employee is not required to have a partial lobotomy to remove all information relevant to his former position. The Superior Court explained that "Wallover was free to solicit business from those customers for two reasons: first the customers' identities were not trade secrets; and, second, even if they were, the former employee cannot be enjoined from using trade secrets retained solely in his memory." The Superior Court found that LLM was not entitled to an injunction and reversed the Bucks County trial court's decision granting an injunction. The Pennsylvania Supreme Court denied certiorari.

Winner Logistics, winner of the underlying suit, instituted this action for wrongful use of civil proceedings against LLM, defendant Ball, and defendant attorneys. On

4. Summary judgment opinion dated May 8, 2008 (citing *LLM v. Winner*, No. 326 EDA 2005 at 11).
5. Summary judgment opinion dated May 8, 2008 (citing *Van Prod. Co. v. General Welding*, 213 A.2d 769, 766 (Pa. 1965)).

May 15, 2008, summary judgment was granted in favor of Winner Logistics and against defendants Labor Logistics and Ball. Defendant Ball affirmatively insisted that he did not rely on the advice of counsel when determining whether the underlying action could be initiated or continued. Ball's sole claim to probable cause was based on his individual and uninformed reasonable belief that the claim may be valid. The court found that a client's ignorant hopeful intuition based upon a decision not to ask retained counsel whether a valid lawsuit could be brought under the existing or developing law is not acceptable. Since they affirmatively refused to ask counsel, defendants Labor Logistics and Ball must have acted "primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based" when they proceeded in the underlying action.

Winner Logistics also moved for summary judgment against the attorney defendants. On October 8, 2008, the court denied the motion finding that genuine issues of material fact existed as to what attorney defendants knew before initiating, procuring and continuing the legal action.

From October 14, 2009 to November 5, 2009, the case was tried before a jury against the attorney defendants. During deliberations the jury made a specific request to view a copy of the trial court's decision in the underlying action. The court, after discussion with counsel, supplied the jury with the trial judge's opinion as well as the Superior Court opinion overruling it and the Superior Court's order staying the trial court's order pending its own resolution of the legal issues.

Among the questions decided by the jury were the following:

Question No. 1:

Do you find that the attorney defendants initiated, or continued the underlying lawsuit for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claims on which the proceedings were based?

Question No. 2:

Were the attorney defendants, as attorneys in the underlying lawsuit, grossly negligent in initiating, or continuing the underlying lawsuit?

Question No. 3:

Did the defendant attorneys reasonably believe in the existence of the facts upon which the claim was based and either:

a) reasonably believe that under those facts the claim may be valid under the existing law properly applied to those facts

or;

b) believe in good faith that the initiation or continuation of the underlying case was not intended to merely harass or maliciously injure the opposite party?[6]

On November 5, 2009, the jury provided the court with

---

6. Jury verdict sheet.

a note stating they reached a verdict on questions one and three but were unable to reach a consensus on question two.[7] After discussion with counsel, the court decided to take a verdict on one and three.[8] The jury responded "no" to question one and "yes" to question three.[9] After receiving these responses, the jury stepped out. Counsel presented their opinion as to whether jury deliberations should continue. Counsel for the attorney defendants argued that the jury had decided that his clients were not liable for any claims asserted against them and moved for an entry of a verdict in favor of defendants on all counts. Counsel for plaintiff agreed. "I think he [counsel for attorney defendants] is correct."[10] Shortly thereafter, counsel for plaintiff stated, "Your Honor, I would like to preserve the position we raised earlier, which is that gross negligence alone is ground for liability under the Dragonetti Act."[11] The verdict was taken by the court and recorded as a defense verdict and the jury was dismissed.

On November 13, 2009, plaintiff filed a post-verdict motion seeking a new trial. On May 20, 2010, after oral argument, the court denied the post verdict motion. On May 27, 2010, attorney defendants filed a praecipe to enter final judgment. On June 9, 2010, plaintiff filed this timely appeal. On June 28, 2010, attorney defendants filed a cross appeal. The cross appeal is limited to the following issues: 1) whether the Pennsylvania Dragonetti Act is unconstitutional as applied to the regulation of attorney conduct, and 2) whether success on the merits for the

---

7. N.T. Vol. 16 p. 3, 12.
8. N.T. Vol. 16 p. 10-11.
9. N.T. Vol. 16 p. 13-14.
10. N.T. Vol. 16 p. 15.
11. N.T. Vol. 16 p. 15.

plaintiff in the trial court precludes a later Dragonetti Act claim against that plaintiff or against plaintiff's lawyer.[12]

## DISCUSSION

### I. *Whether the Attorney Defendants had a Reasonable Belief in the Factual and Legal Validity of the Underlying Claims Against Winner Logistics was a Question for the Jury.*[13]

The common law cause of action for wrongful use of civil proceedings has been codified at 42 Pa. C. S. A. § 8352 et. seq. The statute is referred to as the "Dragonetti Act." The tort of wrongful use of civil proceedings is interpreted and applied broadly against those who use legal process as a "tactical weapon to coerce a desired result that is not the legitimate object of the process."[14]

In order to state a claim for malicious use of process, a plaintiff must prove that defendant initiated or continued civil proceedings against the plaintiff:

---

12. The attorney defendants' appeal is based respectively on this court's denial of summary judgment on October 8, 2008 and overruling attorney defendant's preliminary objections on June 5, 2007. Appellate jurisdiction is generally limited to appeals from final orders of courts of common pleas. *Piltzer v. Independence Federal Savings and Loan Association of Philadelphia,* 456 Pa. 402, 319 A.2d 677 (1974); *Williams v. Williams,* 385 A.2d 422 (Pa. Super. 1978). An order is final and thus appealable if it ends litigation, disposes of the entire case or effectively puts the litigant out of court. *T. C. R. Realty. Inc. v. Cox,* 472 Pa. 331, 372 A.2d 721 (1977). As such no appeal can be taken from an order denying summary judgment or an order overruling preliminary objections since the orders are not final.

13. Plaintiff appeals this court's denial of summary judgment in their favor. As stated in footnote 12, appeals lie only from final orders that end litigation, dispose of the entire case or effectively put the litigant out of court. Plaintiff's appeal from the order denying summary judgment should be quashed since it is not a final order subject to appellate review.

14. *McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020, 1026 (1987).

(a) without probable cause or in a grossly negligent manner;

(b) for an improper purpose; and

(c) that those proceedings were terminated in favor of the plaintiff.[15]

Under the Dragonetti Act, "probable cause" is defined as follows:

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

(1) Reasonably believes that under those facts the claim maybe valid under the existing or developing law;

(2) Believes as an attorney of record, in good faith, that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.[16]

"Probable cause" is not defined in terms of any specific quantum of evidence or burden of proof. It is defined in terms of reasonable belief and good faith. The reasonableness of an attorney's belief is assessed objectively.[17] Where there are no material conflicts in the evidence, the existence of probable cause is a question

---

15. 42 Pa. C. S. A. § 8351 (a)(1) and (2); *Rosen v. Tesoro Petroleum Corp.* 582 A.2d 27 (Pa. Super. 1990).

16. 42 Pa. C. S. A. §8352.

17. *Bannar v. Miller*, 701 A.2d 232, 238 (Pa.Super.1997).

of law for the court. However, the existence of probable cause is not always a question of law. When facts material to the issue of probable cause are in controversy, a factual dispute exists and the issue becomes one for the fact finder to resolve after proper instruction from the court.[18] When the existence of probable cause is a mixed question of law and fact, it cannot be determined as a matter of law.[19]

The record evidence demonstrates that issues of fact existed on the question of whether the attorney defendants had a reasonable belief in the facts to institute and continue the underlying action for breach of restrictive covenant and for misappropriation of trade secrets. The record evidence demonstrates that the attorney defendants were provided with the following facts: Ball testified at trial that he recounted to the attorney defendants Wallover's initial interview with Ball during which there was a discussion of a requirement for a written covenant not to compete.[20] Ball also testified that a written covenant was specifically mentioned in the employment letter to Wallover following the initial interview.[21] Ball informed the attorney defendants that a Labor Logistics and Management, Inc. policy existed that all managerial employees were required to sign a restrictive covenant and that Wallover was aware that restrictive covenants were required. In fact, on one occasion, Wallover signed as a witness to a restrictive covenant signed by one employee. Ball also provided

---

18. *Broadwater v. Sentner*, 725 A.2d 779, 782 (Pa.Super. 1999), a - peal denied, 562 Pa. 664, 753 A.2d 814 (2000). *Wainauskis v. Howard Johnson Co.*, 488 A.2d 1117, 1123(Pa. Super. 1985); *Turano v. Hunt*, 631 A.2d 822, 825 (Pa. Cmwlth. 1993), appeal denied, 538 Pa. 652, 647 A.2d 905 (1994).

19. *Bannar v. Miller*, 701 A.2d 232 (Pa. Super. 1997).

20. N.T. Vol. 10 p. 142.

21. D-5.

the attorney defendants with a previously prepared chart listing all salaried employees who had signed restrictive covenants at Labor Logistics Management, Inc. Wallover's name appeared on the chart as having signed the restrictive covenant.[22]

Additionally, Ball also provided the attorney defendants with typical restrictive covenants agreements signed by Labor Logistics and Management, Inc. employees.[23] Ball informed the attorney defendants that restrictive covenants were signed by Ball and by other managerial employees of Labor Logistics Management who had access to its sensitive and protected customer and related business information.[24]

Testimony at trial was also presented that the attorney defendants researched the issue of missing and lost documents.[25] From their research, the attorney defendants determined that a witness could testify regarding the existence of lost documents. The attorney defendants felt that although the lack of the signed restrictive covenant made the case more difficult, the information provided by Ball would be sufficient to proceed. Defendant Conrad testified that the absence of a signed agreement made the case more difficult, however her investigation and research led her and defendant Bubba to believe that an action seeking injunctive relief and damages on behalf of LLM against Winner could be pursued and won.

The attorney defendants testified at trial that they believed the trade secret claim had a substantial factual and

22. N.T. Vol. 9 p. 195; D-6.
23. D-4.
24. N.T. Vol. 9 p. 193-194.
25. N.T. Vol. 10 p. 78.

legal basis. Ball informed the attorney defendants about Labor Logistics Management, Inc.'s customers including information about their needs, busy times, loads and the types of drivers preferred. Ball informed the attorneys about the drivers, including experience and availability. Ball informed the attorneys that this information had been developed over a long period of time and was kept on computers that were protected by passwords. The information was not accessible to the whole company but was kept at specific locations and only certain employees had access to the information. The hard copy was kept under lock and key. This information included the customer prospect file, driver profile file, driver database and customer prospect database.

The attorney defendants relied upon cases which identified customer lists as highly confidential and valuable assets.[26] The precedents established by the cases as well as the facts furnished to the attorney defendants by Ball informed their reasonable belief that the trade secret claim had validity. An attorney is not required or expected to prejudge his client's claim, and although she may be fully aware the chances of success are comparatively slight, the attorney may present it to the court for adjudication if client insists without running the risk of being sued in return. It is the attorney's responsibility to reasonably and accurately explain to the client the nature of the chances for success. The jury in this case was the proper finder of

---

26. See e.g. *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 623, 136 A.2d 838, 842, 843 (1957); *Robinson Electric Supervisory Co. v. Johnson*, 154 A.2d 494 (Pa. 1959); *Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 213 A.2d 769 (1965); *Felmlee v. Lockett*, 351 A.2d 273, 278 (Pa. 1976); *Air Products & Chemicals, Inc. v. Johnson*, 442 A.2d 1114, 1120 (Pa. Super. 1982).

fact and they properly found for defendants.[27]

## II. *The Court's Evidentiary Rulings were Proper.*

### A. *Allowing testimony and publishing on Judge Rufe's opinion to the jury is not error.*

Plaintiff argues that permitting evidence and argument regarding Judge Rufe's order and opinion in the underlying matter was unfairly prejudicial and confusing. Admission of evidence is a matter within the sound discretion of the trial court and should not be reversed absent a showing that the trial court clearly abused its discretion. An abuse of discretion occurs when the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill will as shown by the evidence or record.[28] Evidentiary rulings which did not affect the verdict may not provide a basis for disturbing the jury's judgment.[29] Prejudice means an undue tendency to suggest a decision on an improper basis.

For a new trial to be warranted, an evidentiary ruling

---

27. In the event reliance upon defendants' expert testimony would have been necessary to the verdict, a serious question of sufficiency of the evidence would be presented. See, *Samuel-Bassett v. Kia Motors Am., Inc.*, 2007 Phila. Ct. Com. Pl. LEXIS 304 (Pa. C.P. 2007)(although qualified to offer "expert opinion testimony," the sincerity with which he conducts his "evaluation," the methodology or lack thereof, the factual basis on which his opinion is based, his candor, self-interest and bias are all matters for the finder of fact to consider in judging credibility and determining whether to accept all or some or none of his testimony). However, this jury verdict can reasonably be upheld disregarding all such expert testimony. See, *S.N.T. Industries, Inc. v. Geanopulos*, 525 A.2d 736, 740 (Pa. Super. 1987)("Where the jury's verdict is supported by testimony which is not inherently improbable nor at variance with admitted or proven fact or with ordinary experience, a new trial will not be granted.").

28. *Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (Pa. 2009).

29. *Callahan v. AMTRAK*, 979 A.2d 866, 871-872 (Pa. Super. 2009).

must not only be erroneous, but also be harmful. It is incumbent upon the moving party to demonstrate that the prejudice suffered was from the mistake by the trial court.[30]

In this case, Judge Rufe's opinion played a key role in the historical background of this case. Testimony regarding the order and opinion was necessary. The testimony also included the Superior Court opinion which reversed Judge Rufe's order and opinion. The jury was informed that Judge Rufe's opinion was a nullity. The opinions were necessary to convey a complete picture of the underlying case.

The jury respectfully asked the court to read and provide a copy of Judge Rufe's opinion specifically with respect to trade secrets.[31] The court, after consulting with counsel for both sides, provided the jury with a copy of Judge Rufe's opinion. Simultaneously, the court provided the jury with the Superior Court's opinion staying Judge Rufe's decision as well as the Superior Court opinion that reversed the decision.[32] Providing the jury with a copy of the stay order and the decision of the Superior Court produced no prejudice whatsoever.

The court instructed the jury on the governing law on trade secrets directly from the Superior Court opinion. The court instructed the jury as follows:

[a]n employee is free to take with him when he leaves an employer such information about the customers of the employer as he remembers. The customers' identities

---

30. *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116 (Pa. 2000).
31. N.T. Vol. 15 p. 13.
32. *Id.* at 18-19, 22-23.

are not trade secrets and an employee can use customer identities retained solely in his memory. So the names on the LLM customers lists does not qualify as trade secrets. Even if it were the names, even if they were to be considered trade secrets, if those names were not stolen or improperly taken from LLM but were simply retained in memory, then they could be used.[33]

By instructing the jury on trade secrets directly from the Superior Court opinion and then providing the jury with the opinion correctly informed the jury that the Superior Court opinion was the law. Introducing and providing a copy of Judge Rufe's opinion to the jury in response to their specific request could not be error.

B. *Permitting Epstein to testify as an expert was not reversible error.*

Plaintiff argues that the trial court erred in denying its motion in limine to preclude the attorney defendants' expert, Alan Epstein, from testifying. Plaintiff alleges that Epstein should not have been permitted to (1) present evidence that ethical rules mandated their frivolous lawsuit and (2) testify regarding improper purpose.[34]

It is well-known under Pennsylvania law that the standard by which a witness qualifies as an expert witness is a liberal one. In order to qualify as an expert witness in a given field, a witness normally need only possess more expertise than is within the ordinary range of training, knowledge, intelligence, or experience. Thus, ordinarily,

---

33. N.T. Vol. 14 p. 22, 27-28.

34. Plaintiff also contends that the court erred in permitting the e-pert to discuss and opine on the issue of probable cause and Judge Rufe's opinion. These matters were previously addressed infra and are incorporated herein.

"the test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation."[35] The fact that an expert witness is one who claims a special knowledge or experience beyond that of the normal individual does not confer extra credibility. When expert testimony is admitted, the credibility of the witness and the opinion expressed must be evaluated, even if uncontested. Even when expert testimony is properly admitted, its assistance should not be overstated. Professional expert opinion testimony is generally evidence of low quality, for "an opinion is only an opinion." Opinion evidence is considered of a low grade and not entitled much weight against positive testimony of actual facts such as statements by the defendant and observation of his actions.[36]

Expert testimony is subject to cross examination where an expert's opinion becomes so compromised a jury ignores it. Given the lax Pennsylvania standard, however, even this expert's testimony met the standard.[37] A witness does not fail to meet the reasonable pretension standard by omitting former employers from his resume or denying the clear meaning of a judicial decision or pronouncing that an attorney may sometimes present misleading evidence to the court.

The professional rules upon which expert Epstein testified were not relied upon as any basis for a cause of

35. *Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 481, 664 A.2d 525, 528 (1995).

36. *Commonwealth v. McCloud*, 455 A.2d 177, 179 (Pa. Super. 1983).

37. If this testimony had been essential for this verdict to be upheld a serious issue would be presented because of the demonstrated lack of candor. However, the verdict in this case did not necessarily rely on this expert opinion.

action. This jury was properly instructed as to the standard which governs the relationship between a lawyer and client. The jury was permitted to disregard any expert testimony that is unsupported by the facts or not credibly presented and this jury obviously did.

Thus, there was not reversible error.

## III. *Jury Charge*

A. *The court properly instructed the jury on gross negligence and improper purpose.*

Plaintiff contends that the court erred in charging the jury that the attorney defendants could not be held liable for gross negligence under the Dragonetti Act unless the jury also found that the attorney defendants initiated or continued the underlying action for an improper purpose. It is plaintiff's contention that "based on the text and structure of the Dragonetti Act, gross negligence alone is a sufficient basis for imposing liability under the act."[38] Neither the text, structure, legislative intent nor legislative history supports the theory that a lawyer who loses a case may be sued by the winning party for any "gross negligence" in the conduct of the litigation.

The court instructed the jury as follows:

The Dragonetti Act, which is really the wrongful use of civil proceedings, that's what it's all about, says a person who takes part in the initiation or continuation of civil proceedings against another is subject to liability if he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than

---

38. Plaintiff's brief in support of post-verdict motions p. 21-22.

that of securing the proper discovery, joinder of parties, or adjudication of the claim in which the proceedings are based, period.[39]

The court reviewed the questions on the verdict sheet which incorporated the elements necessary to prove the claim of wrongful use of civil proceedings. The court instructed the jury as follows:

...Question number one, you're going to get a copy of this question number one: Do you find that the attorney defendants initiated or continued the underlying lawsuit for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claims on which the proceedings were based? Yes or no.

Question Two: Were the attorney defendants, as attorneys in the underlying lawsuit, grossly negligent in initiating or continuing the underlying lawsuit? Yes or no.

Question Three — now, all I'm doing, I read you the statute, all we've done here is couch the Statute in terms of questions and we tried to incorporate what we in the law call the elements into each question. So question three has several parts because probable cause requires either or and I think it's spelled out this way...[40]

The court also correctly instructed the jury on the meaning of gross negligence as follows:

Gross negligence is substantially more than ordinary

39. N.T. Vol. 14 p. 17.
40. N.T. Vol. 14 p. 20-21.

carelessness, inadvertence, laxity or indifference, but it's less than wanton or reckless behavior. Gross negligence is an action or a failure to do something, a failure to act which grossly deviates from an ordinary standard of care.[41]

The element of gross negligence under the Dragonetti Act was presented to the jury as a separate issue without any reference to the attorney's improper purpose. The court coupled the element of gross negligence with improper purpose only when the court decided that the answers to questions one and three rendered a defense verdict and dismissed the jury without requiring any answer to question two, the gross negligence question. Thus, whether this was proper has nothing to do with the jury charge as given and is strictly a question of law, namely one of statutory interpretation.

Title 42 Pa.C.S. § 8351 of the Dragonetti Act imposes liability upon a person, in this case an attorney, who:

> ...acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based;...

Plaintiff claims this text makes gross negligence alone a sole basis for liability under the act.[42] Plaintiff's interpretation would potentially subject attorneys to liability from all opposing parties in every unsuccessful action initiated or continued. Liability would be imposed

---

41. *Id.* at 28-29.
42. Plaintiff's brief in support of post trial motions pp. 22-23.

even if the attorney pursued the action in good faith but failed to obtain discovery in accordance with the rules of civil procedure, failed to present motions for discovery, lost discovery or failed to timely submit required court filings such as pretrial motions or points for charge. Such liability amounts to nothing more than legal malpractice claims by non clients which would subject attorneys to punitive damages and attorney fees from the other side.[43] The act was never intended to expand potential liability to include attorney good faith but gross negligent representation. This interpretation transmogrifies the Dragonetti Act into a civil Post-Conviction Relief Act with potentially dire financial consequences for any attorney who unfortunately loses a case.

Plaintiff's interpretation is contrary to the prior Superior Court interpretation of the act. In the context of the Dragonetti Act, Pennsylvania courts have defined gross negligence to mean the "want of scant care" or "lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party," who may typically recover exemplary damages.[44] The Superior Court has held a defendant attorney is not liable unless the plaintiff can demonstrate the underlying action was filed for an improper purpose even if the defendant attorney either lacked probable cause in or acted with gross negligence by initiating or maintaining the underlying action.[45]

---

43. See 42 Pa. C. S. § 8353.

44. *Hart v. O'Malley*, 781 A.2d 1211, 1218 (Pa. Super. 2001).

45. *Broadwater v. Sentner*, 725 A.2d 779, 784 (Pa. Super. 1999). See also, *Morris v. Di Paolo*, 930 A.2d 500, 504 (Pa. Super. 2007), and *Rosen v. Tesoro Petroleum Corp.*, 582 A.2d 27 (Pa. Super. 1990) (the court identifies the elements for wrongful use of civil proceeding as lacking probable cause or in a grossly negligent manner and improper purpose).

Pennsylvania courts further explain that an attorney is neither required nor expected to prejudge his client's claim. Although an attorney may be fully aware that the chances are comparatively slight, it is her responsibility to present it in court for adjudication if the client so insists after she has explained to the client the nature of the chances for success.[46]

The strict goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. The Statutory Construction Act of 1972[47]and the Pennsylvania Supreme Court in numerous cases[48] has stated that the plain language of a statute is the best indication of legislative intent. When the statutory language is clear, explicit, and free from ambiguity, courts must discern intent from the language alone, without regard to "spirit" of the statute or legislative history. Courts must construe words and phrases according to their common and approved usage. Courts must construe a statute in such a way as to give effect to all its provisions, if possible. Every provision is presumed meaningful; none should be dismissed as mere surplusage.[49]

Giving effect to all the words in the statute, the only reasonable reading of § 8351 is to interpret the "improper purpose" clause as modifying both "in a grossly negligent manner" and the "probable cause" clause. The word "and," which appears in the statute after the clause "without

---

46. *Broadwater v. Sentner*, 725 A.2d 779, 784 (Pa. Super. 1999).

47. 1 Pa. C. S. § 1501, et. seq.

48. *Commonwealth v. Magliocco*, 584 Pa. 244, 883 A.2d 479 (2005); *Colville v. Allegheny County Ret. Bd.*, 592 Pa. 433, 926 A.2d 424 (2007); Pa. *Associated Builders Constrs. Inc. v. Cmwlth Dept. of Gen. Services.*, 593 Pa. 580, 932 A.2d 1271 (2007).

49. 1 Pa. C. S. § 1922; see also *In re Adoption of J.A.S.*, 939 A.2d 403, 405-406 (Pa. Super. 2007).

probable cause," is a conjunction connecting each element of the former clause "in a grossly negligent manner or without probable cause" clause to the latter "improper purpose" clause.

The legislative history for the Dragonetti Act requires this interpretation. The legislature believed that the terms malice and gross negligence were synonymous. Since, the legislature maintained the belief that malice and gross negligence were synonymous, some bad activity must be associated with gross negligence as intended in the act. Hence, the act's improper purpose clause must apply to the gross negligence clause as well.[50]

This interpretation is also supported by the Pennsylvania Civil Standard Jury Instruction committee note for 3.11, Gross Negligence. The subcommittee note reads:

It has been held that there are no varying degrees of negligence under Pennsylvania common law and most, if not all, of the cases that discuss gross negligence are discussing proof of the same as required by various statutes, e.g., the Mental Health Act cited above and

---

50. In the legislative journal for the House of Representatives volume 70 page 2634, Mr. Spencer, a representative from Tioga County who supported the motion to create a statutory cause of action for wrongful use of civil proceedings stated: "The purpose of the bill is to abolish what is known as the Old English Rule, a rule that was formulated in 1259. [The Old English Rule required seizure or interference with claimant or claimant's property in addition to proving that the legal process was initiated without probable cause and with malice. *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020 (1987), citing *Publix Drug Co. v. Breyer Ice Cream Co.*, 347 Pa. 346, 349, 32 A.2d 413 (1943)]. The difference between the Senate bill and the House bill is a matter pretty much of legal semantics. Basically, the real difference is between the use of the word "malice" and the use of the words "gross negligence," and in all cases that I could find in the Commonwealth of Pennsylvania, the differences are without distinction as far as civil suits are concerned." 70 Pennsylvania Legislative Journal (House) at 2634-36.

the statutory action entitled Wrongful Use of Civil Proceedings, 42 Pa.C.S. §§8351-8354. However, the latter statute cannot be used as a guide in defining gross negligence since an additional component of the statutory tort is acting "without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." Consequently, an element of malice needs to be shown. *Hart v. O'Malley*, 647 A.2d 545 (Pa.Super. 1994), aff'd, 676 A.2d 222 (Pa. 1996).

An attorney can not be held liable for gross negligence under the Dragonetti Act unless the jury also finds that the attorney initiated or continued the underlying action for an improper purpose. Since this jury found that the attorney did not initiate or continue the underlying lawsuit for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claims on which the proceedings were based, no further deliberations were necessary and the question of gross negligence did not need to be answered. The court properly accepted and recorded a verdict based upon the answers to question one and three and discharging the jury.

### B. *Clear and convincing standard.*

Plaintiff contends that the court should have charged the jury as a matter of law that the attorney defendants could never have proven in the underlying action by clear and convincing evidence that a restrictive covenant existed because no written signed document could be produced. Essentially, plaintiff requests a directed verdict. It is within the province of the fact-finder, not the court, to determine

the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial. Here, it was the province of the jury to consider the evidence presented at trial, to weigh the credibility of the witnesses for both sides, and to accord each piece of evidence the weight that the jury deemed appropriate.

Plaintiff's position that only direct evidence can possibly be capable of satisfying the clear and convincing standard is incorrect. For evidence to be clear and convincing, the witnesses must be found credible; the facts to which they testify must be distinctly remembered; and the testimony must be so clear, direct, weighty, and convincing that the jury can reach a clear conviction, without hesitancy, of the truth of the precise facts in issue. Although this is a significant burden of proof, it is not necessary that the evidence be uncontradicted, as long as the evidence leads the jury to a clear conviction of its truth.[51] It is not essential that the contents of a document be proven only by the written words.[52]

A missing written covenant makes it more difficult for a party to prevail in an action for breach of restrictive covenant since a missing instrument must be proved

51. Pennsylvania Civil Standard Jury Instruction 5.50A; *Spencer v. Colt*, 89 Pa. 314 (1879); *Cullmans v. Lindsay*, 6 A. 332 (Pa. 1886); *Highlands v. Philadelphia & Reading R.R. Co.*, 58 A. 560 (Pa. 1904); *Lindemann v. Pittsburgh Railways Co.*, 96 A. 1085 (Pa. 1916); *Ralston v. Philadelphia Rapid Transit Co.*, 110 A. 329 (Pa. 1920); *Broida v. Travelers Ins. Co.*, 175 A. 492 (Pa. 1934); *In re Trust Estate of La Rocca*, 192 A.2d 409 (Pa. 1963); *In the Estate of Fickert*, 337 A.2d 592 (Pa. 1975); *Lessner v. Rubinson*, 592 A.2d 678 (Pa. 1991); *In re Cicchetti*, 743 A.2d 431 (Pa. 2000).

52. A lost document may be proven by extrinsic evidence including but not limited to testimony. Pa. R. E. 1004; see also *L.C.S. Colliery, Inc. v. Globe Coal Co.*, 369 Pa. 1, 9, 84 A.2d 776, 781 (1951).

by clear and convincing evidence.[53] However, it is not impossible. Losing the instrument does not bar the action as a matter of law. Viewing the evidence in the light most favorable to the attorney defendants, there is no reason to set aside the jury's verdict and to enter a directed verdict in plaintiff's favor in light of the evidence presented at trial.

## C. *The court properly refused the requested charges.*

Plaintiff contends that the court erred in refusing to charge the jury on their proposed points for charges 6, 21, 22, 23 and 24.[54] The trial court has broad discretion in phrasing jury instructions and is not bound to use the exact language of a requested jury charge. It may choose another form of expression so long as it adequately and clearly covers the subject, and fairly and adequately apprises the jury of the relevant law and guides the jury in its deliberations.[55] Error in the jury charge is sufficient grounds for a new trial only if the charge, taken as a whole, is inadequate, unclear, or has the tendency to mislead or confuse rather than to clarify a material issue and if the substance of that instruction is not otherwise covered by the trial court's general charge.[56] The charges proposed by

---

53. "[T]o recover on a lost instrument, a claimant is required to prove its former existence, execution, delivery, contents, that he is the owner thereof at the time of trial, and that the instrument is lost. The evidence to sustain the averments must be clear and convincing." *In re Greggerson's Estate*, 344 Pa. 498, 501, 25 A.2d 711, 713 (1942).

54. Plaintiff also claims error with proposed point for charge 27 on clear and convincing evidence. The court adopts and incorporates its prior discussion on this issue.

55. *Chicchi v. Southeastern Pennsylvania Transportation Authority*, 727 A.2d 604 (Pa. Cmwlth. 1999), appeal denied, 560 Pa. 750, 747 A.2d 371 (1999).

56. *Von der Heide v. PennDOT*, 553 Pa. 120, 718 A.2d 286, 288 (1998); *Burke v. Buck Hotel Inc.*, 742 A.2d 239, 246 (Pa. Cmwlth. 1999).

plaintiff were either covered within the court's instruction or improper.

With regard to proposed point for charge 6 and 21, the proposed points were clearly and adequately covered in the court's charge to the jury. The court's instruction provided the jury with the relevant law and guided the jury in its deliberations on the questions of improper purpose, probable cause and gross negligence. Plaintiff's claim for error is misplaced; these proposed points were covered by the court's instruction.[57]

Plaintiff's proposed point for charge 23 was also covered. The charge asked the court to charge the jury that the attorneys violated their duty of candor to the court and fairness to opposing counsel when it failed to produce documents requested or presented that were incomplete or missing. During the trial, an issue arose over the production of a copy of Ball's shareholder agreement. The court instructed the jury as follows:

> ...It is important that you understand in order to evaluate Mr. Davitch's testimony that this document, the shareholders agreement which did contain a restrictive covenant that Mr. Ball signed, was contained in the files of Mr. Joseph Bubba at his office as he testified to, but had never been given to plaintiff's counsel in this case or to Mr. Martin in the underlying case.[58]

As such, the court rejected the proposed point since the court provided the jury with an instruction on the produced document and further instruction was unnecessary.

---

57. N.T. Vol. 14 pp. 16-28.
58. N.T. Vol. 14 p. 29-30.

Proposed points for charge 22, 23 and 24, were improper. Proposed points for charge 22, 23 and 24 were intended to provide the jury instruction on the rules for professional conduct. The Rules of Professional Conduct were not designed to impose civil liability upon attorneys.[59]

Since the proposed points were either covered or improper, a claim for error is incorrect.

D. *The court did not error in addressing in responding to the jurors' question to 3(a).*

Plaintiff argues that the court erred in responding to the jurors question concerning interrogatory 3a on the verdict sheet. Interrogatory 3a on the verdict sheet said:

Did the defendant attorneys reasonably believe in the existence of the facts upon which the claim was based and either;

a) reasonably believe that under those facts the claim may be valid under the existing law properly applied to those facts.

The jury raised two questions regarding interrogatory number 3. The jury's first question was:

In reviewing question 3a, if we believe that "under those facts the claim," is not valid under exiting law, but may be valid under developing law or may present the opportunity to change the law, would it be appropriate

---

59. *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277, 1284 (1992); Pa.R.P.C, Scope (stating that "violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules…are not designed to be a basis for civil liability").

to vote yes?[60]

In responding, the court again explained question number three to the jury and accurately charged that the defendants in this case did not claim that they were seeking to modify or reverse existing law, they were seeking to extend existing law only to the facts of this particular case.[61] Although defendant objected to this response, plaintiff did not object.[62] This instruction caused no harm to plaintiff. The instruction connected interrogatory three and negated the possibility that the attorney defendants were trying to develop or change the law.

The second question posed by the jury was:

Would the court please read back the instructions on how to respond to question three. It is our belief that if we do not believe that the attorneys believed in the existence of the facts, then our vote is no regardless of haw we would vote on 3a or 3b. If we say yes that the attorneys believed in the existence of the facts, then our vote would be yes if we believed only a) or b) but not both.[63]

The court and counsel agreed that the jury's belief as stated in the question was correct. The court explained in detail how the jury should approach and answer interrogatory number three and that developing law was not in issue.[64] This particular jury was competent and clearly understood the court's instruction. This jury

---

60. N.T. Vol. 14 p. 55-56.
61. N.T. Vol. 14 pp.56-57.
62. N.T. Vol. 14 p. 62.
63. N.T. Vol. 15 pp. 9-11.
64. N.T. Vol. 15 pp. 9-12.

deliberated earnestly and asked pertinent questions for the task before them with accurate information and rendered a true verdict.

## CONCLUSION

For the reasons discussed above, this court's order denying post verdict motions should be affirmed.