## Young v. Jameson Memorial Hospital

C.P. of Lawrence County, No. 10415 of 2014

*Robert E. Mielnicki*, for plaintiffs.
*Ryan J. King*, for defendants.

COX, *J.*, Nov. 19, 2014—Before the court for disposition are the preliminary objections filed on behalf of the defendants Jameson Memorial Hospital and Sonia K. Panesar, M.D., which raise the following arguments:

I. The plaintiffs complaint lacks specificity as it fails to specifically identify who informed the great-grandmother that the child was stillborn;

II. Counts I, IV, VI and IX are legally insufficient as the plaintiff failed to aver a claim for negligent infliction of emotional distress;

III. Counts II, V, VII and X are legally insufficient as the Supreme Court of Pennsylvania has not adopted the tort of intentional infliction of emotional distress and the conduct pleaded in the complaint does not set forth outrageous conduct to support a claim for intentional infliction of emotional distress;

IV. The plaintiff's claim for punitive damages is legally insufficient as Jameson Memorial Hospital did not have actual knowledge of the statement made to the great-grandmother and the conduct was not so outrageous as to require awarding punitive damages; and

V. Counts III and VIII are legally insufficient as

respondeat superior is a legal doctrine by which employers may be held liable for the actions of their employees and is not a separate cause of action.

In response, the plaintiffs filed a praecipe to mark action discontinued as to all defendants on July 21, 2014, dismissing Counts I, IV, VI, VII, VIII, IX and X of the complaint, which included all claims asserted by Stacey Holmes.

On November 3, 2012, Shakira Henley was admitted to Jameson Memorial Hospital (hereinafter "defendant Jameson") for the purpose of delivering her child. Ms. Henley is the daughter of Stacey Holmes and the granddaughter of Patricia Young. On that same date, Ms. Henley gave birth to a healthy child, whom she named Treylin Demont Henley. Plaintiff Young was present at Jameson Memorial Hospital during the birth of the child and remained in constant contact with Ms. Holmes. According to the complaint, on November 3, 2012, "and/or" November 4, 2012, the staff of Jameson Memorial Hospital "and/or" Sonia K. Panesar, who is an obstetrician, informed plaintiff Young that the child delivered by Ms. Henley was stillborn. Plaintiff Young immediately conveyed that information to Ms. Holmes. The complaint also avers that the employees of defendant Jameson and defendant Panesar knew the child was not stillborn. Plaintiff Young asserts that she suffered severe mental "and/or" emotional distress "and/or" anxiety as a result of that alleged misrepresentation, which required medical attention. On April 22, 2014, the plaintiffs filed suit against defendant Jameson and defendant Panesar seeking to recover for claims of intentional infliction of emotional distress, negligent infliction of emotional distress and respondeat superior, in response, the defendants filed preliminary objections on June 24, 2014. The plaintiffs

then filed a praecipe to mark action discontinued as to all defendants on July 21, 2014, dismissing Counts I, IV, VI, VII, VIII, IX and X of the complaint, which included dismissing all claims being raised by Ms. Holmes.

The first issue raised by the defendants in their preliminary objections is the plaintiffs complaint lacks specificity as it fails to specifically identify who informed the great-grandmother that the child was stillborn.

The specificity of a pleading is governed by Pa.R.C.P. No. 1019, which states "(a) The material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pennsylvania is a fact-pleading jurisdiction, which requires the plaintiff to provide the defendant with notice of what the plaintiff's claim is and the grounds for the claim. *Unified Sportsmen of Pennsylvania v. Pennsylvania Game Com'n (PGC)*, 950 A.2d 1120,1134 (Pa. Cmwlth. 2008) (quoting *Sevin v. Kelshaw*, 417 Pa. Super. 1, 611 A.2d 1232, 1235 (1992)). Additionally, the plaintiff must summarize the facts essential to support the claims. *Id.* "The rule requires a plaintiff to plead all the facts that he must prove in order to achieve recovery on the alleged cause of action. The pleading must be sufficiently specific so that the defending party will know how to prepare his defense." *Commonwealth ex rel. Pappert v. TAP Pharmaceuticals Products, Inc.*, 868 A.2d 624, 635 (Pa. Cmwlth. 2005) (citing *Department of Transportation v. Shipley Humble Oil Co.*, 29 Pa. Cmwlth. 171 370 A.2d 438 (1977)). The purpose behind the rules of pleading is to enable parties to ascertain, by utilizing their own professional discretion, the claims and defenses that are asserted in the case. *Kraisa v. Keypunch, Inc.*, 424 Pa. Super. 230, 236, 622 A.2d 355, 357 (1993). "The pleadings must adequately explain the nature of the claim to the opposing party so

as to permit him to prepare a defense, and they must be sufficient to convince the court that the averments are not merely subterfuge." *In re Estate of Schofield*, 505 Pa. 95, 477 A.2d 473 (1984) (citing *Sokoloff v. Strick*, 404 Pa. 343, 172 A.2d 302 (1961); *Hornsbv v. Lohmever*, 364 Pa. 271, 72 A.2d 294 (1950); *Rice v. Braden*, 243 Pa. 141, 89 A. 877 (1914)). "A more specific complaint will not be required where the details requested are evidentiary in nature." *Hock v. L. B. Smith. Inc.*, 69 Pa. D. & C. 2d 420, 423 (Pa. Com. Pl. Columbia 1974) (citing *General Acceptance Corp. v. Wilson*, 40 Northumb. L. N. 54).

In the current case, the plaintiff's complaint states, "11. On or about November 3, 2012 and/or November 4, 2012, the staff of defendant Jameson Memorial, and/or defendant Panesar, following said childbirth, told plaintiff Young that said child delivered by Shakira Henley was stillborn." However, the plaintiff fails to state on what date plaintiff Young was informed that the child was stillborn and fails to specifically identify who provided her with that information. Without specifically identifying who spoke with plaintiff Young or, at the very least, providing an adequate description of the individual, the defendants will have a difficult time formulating a defense to the plaintiffs claims. In addition, the specific date that plaintiff Young was informed the child was stillborn is important, so the defendants can examine the appropriate medical, records and determine who was Working at the time the statement was allegedly made. Therefore, the defendants' first preliminary objection concerning a lack of specificity is granted and the plaintiff is granted leave to amend her complaint.

The next issues before the court are whether a plaintiff can recover for the tort of intentional infliction of emotional distress under the existing Pennsylvania law and

whether the plaintiff averred conduct that is outrageous in accordance with Restatement (Second) of Torts §46.

"A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient." *Cooper v. Frankford Health Care System, Inc.*, 960 A.2d 134, 143 (Pa. Super. 2008) (citing *Cardenas v. Schober*, 783 A.2d 317, 321 (Pa. Super. 2001)). A demurrer must be resolved based solely on the pleadings, no testimony or evidence outside of the complaint may be considered to dispose of the legal issue presented. *Id.* "All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true." *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 805 (Pa. Super. 2007) (citing Cardenas, supra.). A demurrer will only be sustained in cases where the complaint fails to set forth a valid cause of action. *Lerner v. Lerner*, 954 A.2d 1229, 1235 (Pa. Super. 2008) (citing *McArdle v. Tronetti*, 426 Pa. Super. 607, 627 A.2d 1219, 1221 (1993)). If a doubt exists regarding whether a demurrer should be sustained, the doubt must be resolved in favor of overruling the demurrer. *R.W. v. Manzek*, 585 Pa. 335, 351, 888 A.2d 740, 749(2005) (citations omitted). Fact-based defenses are irrelevant when ruling on a preliminary objection in the nature of a demurrer. *Werner v. Plater-Zyberk*, 799 A.2d 776, 783 (Pa. Super. 2002) (citing *Orner v. Mallick*, 515 Pa.132, 135, 527 A.2d 521, 523 (1987)). "A 'speaking demurrer' is defined as 'one which, in order to sustain itself, requires the aid of a fact not appearing on the face of the pleading objected, or in other words, which alleges or assumes the existence of a fact not already pleaded, and which constitutes the ground of objection and is condemned both by the common law and the code system of the pleading.'" *Regal Indus. Corp. v. Crum and Forster, Inc.*, 890 A.2d 395, 398 (Pa. Super. 2005)

(quoting Black's Law Dictionary 299 (6th ed. 1991)). The court is not permitted to consider a speaking demurrer in rendering its decision on preliminary objections. *Id.*

The tort of intentional infliction of emotional distress is set forth in Restatement (Second) of Torts § 46, which states as follows:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

The conduct to support recovery for intentional infliction of emotional distress must be so outrageous in character that it goes beyond all bounds of decency, and it has not been enough to demonstrate that the defendant acted with intent which is tortious or even criminal or with malice to a degree that would entitle the plaintiff to punitive damages for another tort. *Toney v. Chester County Hosp.*, 961 A.2d 192, 202 (Pa. Super. 2008) (quoting *Reardon v. Allegheny College*, 926 A.2d 477, 488 (Pa. Super. 2007)).

However, this claim has not been explicitly accepted or rejected by the Pennsylvania Supreme Court. *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d

988 (1987). In *Kazatsky*, the appellants filed a complaint asserting, among other claims, a cause of action for intentional infliction of emotional distress against a cemetery concerning the burial of their infant son and daughter, who died after being born prematurely. The appellant's son passed away on June 30, 1981, and the daughter passed away on July 7, 1981. The appellants were referred to the cemetery by their rabbi and, upon speaking with a representative for the cemetery, were informed that the total cost for a burial plot was $180.00 in the children's portion of the cemetery, which did not permit standing tombstones. The appellants purchased the gravesite and paid in full on the date of their infant son's funeral. The same was done when the appellants' daughter passed away. The appellants soon became dissatisfied with the location of the burial plots as it was in a remote area of the cemetery and it became muddy when wet. They also wanted a standing headstone as they noticed there were adult graves with standing headstones. The appellants purchased a gravemarker from a monuments company. The cemetery then charged the appellants an additional fee of $100.00 for perpetual care and $43.00 for sodding the burial plots. Upon completion of the gravemarker, the monument company sent a card to the appellants informing them that the gravemarker had been installed. However, there was no marker on the children's grave-sites. The appellants contacted the cemetery and were informed that there was an outstanding balance for the perpetual maintenance fee and the sodding and the marker had to be installed by an employee of the cemetery as the monument company only delivers the same. The appellants were upset, but offered to bring the necessary payment to the scheduled unveiling. The cemetery rejected that arrangement and demanded payment prior to installation. The appellants then spoke with the owner

of the cemetery, who stated that he would investigate the matter. Three days later, the owner contacted the appellants and informed them the marker would be installed and they could proceed with their unveiling, but there would be no care or maintenance to the grave-sites unless the bill was paid. The unveiling took place as scheduled. As the appellants and their attendees were leaving the grave-sites, they were approached by the owner's wife, who expressed her condolences. She also reiterated that there would be no care or maintenance unless the appellants paid the bill of $143.00. The appellants presented their evidence at trial and the appellee filed for a compulsory nonsuit, which was granted by the trial court. On appeal, the Superior Court of Pennsylvania affirmed the opinion of the trial court and the Pennsylvania Supreme Court granted the appellants' petition for allowance of appeal.

The *Kazatsky* Court cited to Section 46 of the Restatement and its commentary that explained the term extreme and outrageous conduct, which stated as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average, member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Id.*, 515 Pa. at 190-191, 527 A.2d at 991 (citing Restatement

(Second) of Torts §46 commentary).

The law will not intervene in every case where someone's feelings are hurt by insults, threats, petty oppressions or rough language. *Id.*, 515 Pa. at 191, 527 A.2d at 992 (citing Restatement (Second) of Torts §46 commentary). The court noted that the appellants failed to present any evidence that the cemetery's conduct reached a level of outrageousness that would support recovery of damages as there was no expert testimony or evidence of any kind outside of the unsubstantiated averments of the appellants. *Id.* Moreover, Pennsylvania law follows the impact rule, "which barred recovery for fright, nervous shock or mental or emotional distress unless it was accompanied by a physical injury or impact upon the complaining party." *Id.*, 515 Pa. at 191-192, 527 A.2d at 992 (citations omitted). However, a limited exception to the impact rule was created and physical impact was not a precondition for recovery where the plaintiff was in personal danger of physical impact from the negligent conduct of the defendant and actually feared physical impact. *Id.* (citing *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970)). That became known as the zone of danger theory, *Id.* That theory does not extend to close relatives who are not at the accident scene as the emotional distress is more of a result of the emotional makeup of the observer than from the nature of the defendants' actions. *Id.* (citing *Mazzagatti v. Everingham*, 512 Pa. 266, 516 A.2d 672 (1986)). The *Kazatsky* Court found that the concerns over proof of causation were unjustified in the area of a by stander recovery for emotional distress, but there are concerns regarding causation in the tort of intentional infliction of emotional distress. *Id.* The court then turned, its attention to the term outrageous as set forth in the commentary to Section 46 by stating, "The term outrageous' is neither

value-free nor exacting. It does not objectively describe an act or series of acts; rather, it represents an evaluation of behavior. The concept thus fails to provide clear guidance either to those whose conduct it purports to regulate, or to those who must evaluate the conduct." *Id.*, 515 Pa. at 195, 527 A.2d. at 994. "The restatement tells us that what is prohibited is conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.*, 515 Pa. at 195-196, 527 A.2d at 994 (quoting Restatement (Second) of Torts commentary). The *Kazatsky* Court ruled that injury is a necessary element of every basic tort, including intentional infliction of emotional distress, which requires some objective proof of severe emotional distress. *Id.* However, the court did not fully adopt Section 46 as a recoverable tort in Pennsylvania by stating, "We therefore conclude that if Section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence. In this case no such evidence was presented and the record further reflects that neither [of the appellants] sought medical assistance." *Id.* Therefore, the court affirmed the Superior Court's order sustaining the ruling of the trial court. *Id.*

Again, in *Taylor v. Albert Einstein Medical Center*, 562 Pa. 176, 754 A.2d 650 (2000), the Pennsylvania Supreme Court addressed the tort of intentional infliction of emotional distress. The *Taylor* Court explained that the tort of intentional infliction of emotional distress has never been expressly recognized in Pennsylvania and

Section 46 has merely been cited to set forth the minimum elements necessary to sustain such a cause of action. *Id.*, 562 Pa. at 181, 754 A.2d at 652. In that case, the basis for recovery was Section 46(2), which requires a family member to be present at the time when the extreme or outrageous conduct occurred. *Id.*, In that case, the tortious conduct being complained of by the appellants is that they suffered emotional distress due to providing consent for a medical procedure to be performed on their daughter to one doctor and the procedure was actually performed by another doctor, who did so in a negligent manner and caused the child's death. The *Taylor* Court determined that the appellants did not have a claim for intentional infliction of emotional distress as they were not present at the time of the tortious conduct and did not have to prepare for the immediate emotional impact of that conduct. *Id.*, 562 Pa. at 183, 754 A.2d at 653.

However, the Superior Court of Pennsylvania has permitted a plaintiff to properly plead and prove a claim for intentional infliction of emotional distress in *Field v. Philadelphia Electric Company*, 388 Pa. Super. 400, 565 A.2d 1170 (1989). In that case, the appellant was employed to work at a nuclear power plant as a health physics technician. The appellant was ordered to enter a pipe tunnel at the nuclear power plant, where he observed standing water on the floor of the tunnel and he radioed to other personnel informing them that he believed that it was unsafe to remain in the tunnel. He was then ordered to test for radiation, which he did. The appellant advised his employer that the water problem should not be resolved while the plant was in operation because it would be too dangerous to be in the tunnel. Despite the warnings, the employer ordered the appellant and other personnel into the tunnel to resolve the standing-water problem. While

the appellant was in the tunnel, the employer vented radioactive gases into the tunnel to continue operating the nuclear reactor, even though they were aware the appellant was working there. The appellant possessed a survey meter, which indicated that the level of radiation surpassed the levels permitted by the Nuclear Regulatory Commission (hereinafter "NRC"). He immediately ordered everyone to exit the tunnel. Additionally, two radiation detectors at the tunnel entrance and the control point for the tunnel alerted when the appellant passed through them, which indicated that radiation exposure was in excess of the levels permitted by the NRC regulations. Subsequently, the appellant discovered that the reactor operators deliberately ordered the radioactive steam to be bypassed from the regular system and vented into the tunnel where he was located. The appellant filed suit asserting claims of intentional exposure to radiation, wrongful discharge and intentional infliction of emotional distress. The appellee filed preliminary objections in the nature of a demurrer and the trial court granted those preliminary objections stating that federal law preempts the tort of intentional exposure to radiation, there is no common law action for intentional exposure to radiation, appellant failed to state a claim for wrongful discharge, there was no egregious conduct to support the claim of intentional infliction of emotional distress and punitive damages were not recoverable based upon the allegations in the complaint. The appellant then filed an appeal with the Superior Court.

The appellant argued that he suffered severe emotional distress from learning of his overexposure to radiation and from the appellees' misrepresentations concerning his exposure. The *Field* Court explained that the appellant was required to establish that the appellees' conduct was both extreme and outrageous to set forth a claim for intentional

infliction of emotional distress. *Id.*, 388 Pa. Super. at 427, 565 A.2d at 1183. The court then quoted Comment d to Restatement (Second) of Torts § 46, as stating the following:

> *Extreme and outrageous conduct*: The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Id.*, 388 Pa. Super. at 427-428, 565 A.2d at 1183-1184.

The *Field* Court emphasized that the alleged conduct of placing the appellant in a situation to be exposed to radiation and making false statements to conceal the exposure from the appellant were clearly outrageous and extreme in degree that it went beyond all bounds of decency. *Id.*, 388 Pa. Super. at 428-429, 565 A.2d at 1184. Moreover, the *Field* Court distinguished its case from that of *Kazatsky* as the plaintiffs in *Kazatsky* had the opportunity to present evidence that they received medical assistance for their alleged emotional distress and the appellant in *Field* did not have that opportunity as the demurrer was asserted in preliminary objections. *Id.*, 388 Pa. Super. at 428, 565

A.2d at 1184. thus, the *Field* Court determined that the appellant's claim of intentional infliction of emotional distress was not legally insufficient as he averred conduct that was sufficiently outrageous to support that cause of action and the appellant was entitled to the opportunity to establish that he sought medical treatment for his alleged emotional distress, *Id.*

This issue was also addressed in *Banyas v. Lower Bucks Hospital*, 293 Pa. Super. 122, 437 A.2d 1236 (1981). In that case, the victim was admitted to the appellee's hospital complaining of facial and jaw injuries, which resulted from an altercation with the appellant. He was admitted for surgery for a fractured jaw and died as a result of the negligence of the surgeons and not due to the injuries caused by the appellant. The appellee indicated in their records that the victim's death was caused by the injuries inflicted by the appellant, who was charged with various criminal charges as a result. The appellant sought recovery for mental anguish arising from the aforementioned criminal charges and the trial court granted the appellee's preliminary objections in the nature of a demurrer concerning all of the appellant's claims. He then appealed to the Superior Court of Pennsylvania. The *Banyas* Court cited to *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) for the proposition that intolerable professional conduct, such as knowingly providing false medical information, is sufficient to permit a claim of intentional infliction of emotional distress to survive summary judgment. *Id.*, 293 Pa. Super. at 127, 437 A.2d at 1239. In *Banyas*, the court stated, "If the appellees...in fact intentionally propagated a falsehood when they wrote that [the victim's] death was attributable solely to [the appellant], we believe that they could also be found liable for the emotional distress suffered by [the appellant]." *Id.*,

293 Pa. Super. at 127, 437 A.2d at 1239. The court further explained, "We would find an intentional misstatement of the cause of death to be intolerable professional conduct and extreme and outrageous." *Id.* Therefore, the *Banyas* Court determined that, if the allegations in the complaint were proven, the appellant would be entitled to relief. *Id.*, 293 Pa. Super. at 128,437 A.2d at 1239.

In the *Chuy* case, Don Chuy was a professional football player for the Philadelphia Eagles (hereinafter "the Eagles"), who suffered a serious shoulder injury in his first season with the team. Pursuant to his contract, he was entitled to his salary for the term of the contract if he was injured in the performance of his service. Mr. Chuy was hospitalized and it was discovered that he had a pulmonary embolism, which ended his athletic career and he retired consistent with advice of his physician. The Eagles requested that he submit to a physical examination by Dr. Dick D. Harrell, who concluded that he suffered from an abnormal cell condition, which made him predisposed to the formation of blood clots and he should retire from football. The Eagles general manager then informed a sports columnist that Mr. Chuy had to retire due to a blood clot and he contacted the Eagles' team physician for further information. The Eagles' team physician informed the columnist that Mr. Chuy had Polycythemia Vera, which is a life threatening condition. Mr. Chuy then panicked and contacted his personal physician, who informed him that he did not have Polycythemia Vera. Mr. Chuy's personal physician conducted several tests to ensure that Mr. Chuy did not have the condition, yet Mr. Chuy was apprehensive and emotionally broke down due to the frightening prospect of imminent death. He also refused to submit to any further tests. Mr. Chuy then filed suit against the Eagles and the National Football League for antitrust

violations, breach of contract, intentional infliction of emotional distress and defamation. The district court dismissed the antitrust claims and the rest of the claims were submitted to the jury by special interrogatories and a verdict was awarded to Mr. Chuy. Post-trial motions were filed by both parties seeking judgment notwithstanding the verdict, which were denied and both parties appealed. The Eagles argued that the actions of the team physician did not constitute extreme and outrageous conduct.

The *Chuy* Court set forth the following elements of intentional infliction of emotional distress: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Chuy*, 595 F.2d at 1273. The court also noted that the Pennsylvania Supreme Court has not specifically adopted this tort, but the decisions have signaled their acceptance of the same. *Id.* (citing *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970); *Forster v. Manchester*, 410 Pa. 192,189 A.2d 147 (1963); *Jones v. Nissenbaum, Rudolph & Seidner*, 244 Pa. Super. 377, 368 A.2d 770 (1976)). The *Chuy* Court reasoned as follows:

> Accepting as we must at this stage Chuy's version of the events, we have a statement to the press by a physician assumed to know the facts that a person is suffering from a potentially fatal disease, even though the physician was aware that the person was not stricken with that condition. This, of course, constituted intolerable professional conduct. Disseminating the falsehood through the national press compounded the harm. Surely Dr. Nixon's statements, as understood by the jury, went beyond the "mere insults, indignities...or annoyances" which people are prepared to withstand, *Id.*, 595 F.2d at 1275.

Furthermore, the Eagles contended that there was no evidence that the physician's comments were intended to cause Mr. Chuy's emotional distress and were recklessly provided to the sports columnist. However, the court stated that the physician did not have to be aware that his statements would cause Mr. Chuy's emotional distress as his emotional distress was substantially certain to follow. *Id.* "Intentionally to propagate a falsehood, the natural and probable consequences of which will be to cause the plaintiff emotional distress, is equivalent, in the language of the Restatement's comment I, to the deliberate disregard of a high degree of probability that the emotional distress will follow.'" *Id.* Thus, the *Chuy* Court concluded that the district court properly rendered a verdict against the Eagles on Mr. Chuy's claim for intentional infliction of emotional distress. *Id.*, 595 F.2d at 1276,

In the case *sub judice*, the defendants assert that the tort of intentional infliction of emotional distress has not been adopted by the Pennsylvania Supreme Court. Although, the Pennsylvania Supreme Court has not officially adopted Restatement (Second) of Torts § 46, the courts have consistently addressed those claims on the merits. There is no indication by the courts that a plaintiff asserting a claim of intentional infliction of emotional distress has been precluded from recovering, other than an inability to adequately prove their claims. The Superior Court of Pennsylvania in *Field* and *Banyas* have overturned trial court decisions to grant demurrers on claims of intentional infliction of emotional distress, which permitted the plaintiffs to proceed further on those claims. Thus, there is no indication that plaintiff Young is precluded from asserting her claim of intentional infliction of emotional distress.

As a result, the court must now address whether plaintiff

Young has properly pleaded a cause of action for intentional infliction of emotional distress. On November 3, 2012, Ms. Henley was admitted to Jameson Memorial Hospital to give birth to her child. Plaintiff Young accompanied her to the hospital and waited during the child birth. She remained in constant contact with Ms. Holmes. Ms. Henley gave birth to a healthy child. According to the complaint, on November 3, 2012, "and/or" November 4, 2012, the staff of Jameson Memorial Hospital "and/or" defendant Panesar, who is an obstetrician, informed plaintiff Young that the child delivered by Ms. Henley was stillborn. Plaintiff Young immediately conveyed that information to Ms. Holmes. The complaint also avers that the employees of defendant Jameson and defendant Panesar knew the child was not stillborn. Plaintiff Young asserts that she suffered severe mental or emotional distress and anxiety as a result of that alleged misrepresentation, which required medical attention.

At this stage of the proceeding, all the material facts set forth in the complaint must be admitted as being true. Utilizing this standard, the court is constrained to overrule the defendants' preliminary objections as plaintiff Young averred sufficient facts, if proven, that may sustain a claim for intentional infliction of emotional distress and could allow a jury to enter a verdict in their favor. Plaintiff Young avers that employees of defendant Jameson "and/or" defendant Panesar informed plaintiff Young that Ms. Henley gave birth to a child that was stillborn when the employees "and/or" defendant Panesar knew that was false. Plaintiff Young then immediately informed Ms. Holmes concerning that statement. Plaintiff Young then averred that she had to receive medical attention because of her emotional distress. Informing a close family member that a child was stillborn, when that is untrue,

is the type of outrageous statement that may cause a person extreme emotional distress. It has been determined that a medical professional knowingly providing false information concerning medical conditions is intolerable professional conduct giving rise to a claim of intentional infliction of emotional distress as stated in *Banyas* and *Chuy*. Similarly, plaintiff Young averred that defendant Jameson's employees and/or defendant Panesar informed plaintiff Young, who then notified Ms. Holmes, that the child was stillborn even though they were aware that the child was alive and healthy. It has clearly been established that providing that type of false information concerning a medical condition is sufficient to permit a claim for intentional infliction of emotional distress to survive a preliminary objection in the nature of demurrer. Moreover, plaintiff Young averred that she suffered harm as a result of the defendants' actions as she suffered severe emotional distress, which required her to seek medical treatment. Therefore, the defendants' preliminary objection in the nature of a demurrer is overruled as plaintiff Young averred a legally sufficient claim for intentional infliction of emotional distress.

The defendants' fourth preliminary objection contends that the plaintiff's request for punitive damages is legally insufficient as Jameson Memorial Hospital did not have actual knowledge of the statement made to the great-grandmother and the conduct was not so outrageous as to require awarding punitive damages

Punitive damages are awarded, in addition to compensatory damages, to punish a defendant for outrageous conduct and to deter others from engaging in similar conduct. *DiGregorio v. Keystone Health Plan East*, 840 A.2d 361, 396-370 (Pa. Super. 2003) (citing *Reading Radio, Inc. v. Fink*, 833 A.2d 199 (Pa. Super. 2003)).

Punitive damages are penal in nature, not compensatory, and are appropriate if the actor's conduct was malicious, willful, oppressive, or exhibited reckless indifference to the rights of others. *Hart v. O'Malley*, 781 A.2d 1211, 1217 (Pa. Super. 2001) (citing *G.J.D. by G.J.D. v. Johnson*, 552 Pa. 169, 713 A.2d 1127 (1998); *Costa v. Roxborough Memorial Hospital*, 708 A.2d 490 (Pa. Super. 1998)). It should be assumed that compensatory damages make the plaintiff whole and punitive damages should only be awarded if the defendant's culpability is so reprehensible that it warrants additional sanctions to punish the defendant's conduct or deter future conduct. *State Farm Mut. Auto., Ins. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519 (2003) (citations omitted). "Punitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct." *Slappo v. J's Development Associates, Inc.*, 791 A.2d 409, 417 (Pa. Super. 2002) (quoting *Bannar v. Miller*, 701 A.2d 232, 242 (Pa. Super. 1997)). However, punitive damages are not awarded for ordinary or gross negligence. *Id.* (citations omitted). "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S.Ct. 1513, 1521 (2003) (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 116 S.Ct. 1589 (1996)). As a result, the trial court must determine whether the plaintiff has presented sufficient evidence from which a jury could reasonably conclude that the defendant acted outrageously. *Id.* (citing *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1098 (1985). The court must take into account the

egregious conduct, the circumstances surrounding the conduct and the relationship between the parties. *Rubin Quinn Moss Heanev & Patterson, P.C. v. Kennel*, 832 F. Supp. 922, 936 (E.D. Pa. 1993) (citing *Brooks ex rel. Stanton v. Astra Pharmaceutical Prods., Inc.*, 718 F.2d 553, 580 (3d Cir. 1983)).

As discussed previously, the conduct necessary to support a claim of intentional infliction of emotional distress is beyond that which would entitle a plaintiff to punitive damages for other torts. *See Reardon, supra.* In the current case, the plaintiff has averred that defendant Panesar or an employee of defendant Jameson has informed plaintiff Young that her great-grandchild was stillborn, which was false. Providing that type of false information to a close family member is sufficiently outrageous to support a claim for intentional infliction of emotional distress, which is a more stringent standard than the requirements for punitive damages. As a result, the plaintiff has averred sufficient facts at this stage of proceedings to set forth a claim for punitive damages and the defendants' fourth preliminary objection is overruled.

The defendants' fifth preliminary objection asserts that Counts III and VIII are legally in sufficient as respondeat superior is a legal doctrine by which employers may be held liable for the actions of their employees and is not a separate cause of action. Initially, it must be noted that Count VIII was dismissed pursuant to the praecipe to mark action discontinued as to all defendants filed on July 21, 2014. Moreover, respondeat superior is not a separate cause of action, but a means of imposing vicarious liability upon an employer for the actions of its employee that are committed during the course of and within the scope of employment. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36 (2000) (citing *Fitzgerald v. McCutcheon*, 270

Pa. Super. 102, 410 A.2d 1270 (1979)). Count III of the plaintiff's complaint is legally insufficient as it asserts a separate claim for respondeat superior attempting to impose vicarious liability upon defendant Jameson for the actions of its employees; however, that is the basis for plaintiff Young's claim in Count II. All allegations to establish that defendant Jameson should be held liable for the actions of its employees through the doctrine of respondeat superior shall be asserted within Count II of the complaint, which is the claim by plaintiff Young against defendant Jameson for intentional infliction of emotional distress. Thus, the court sustains the defendants' fifth preliminary objection and Count III of the complaint is dismissed. Plaintiff Young is granted leave to amend Count II of her complaint to include allegations demonstrating that the doctrine of respondeat superior applies to her claim of intentional infliction of emotional distress against defendant Jameson.

For the reasons set forth in this opinion, the defendants' preliminary objections are sustained in part and overruled in part. The defendant preliminary objections are sustained to the extent that the plaintiffs filed a praecipe to mark action discontinued as to all defendants on July 21, 2014, dismissing Counts I, IV, VI, VII, VIII, IX and X of the complaint. Additionally, the defendants' first preliminary objection concerning lack of specificity is sustained. However, the defendants' remaining preliminary objections for legal insufficiency concerning the plaintiffs' claims for intentional infliction of emotional distress are overruled. Moreover, the defendants' fourth preliminary objection is overruled. The court also sustains the defendants' fifth preliminary objection and Count III of the complaint is dismissed. The plaintiffs are granted leave to amend their complaint.

ORDER OF COURT

Now this 19th day of November, 2014, this case was before the court on September 29, 2014, for oral argument on the preliminary objections to plaintiffs' complaint filed by the defendants, with both parties appearing through counsel, the plaintiff, Patricia Young, represented through counsel, Robert E. Mielnicki, Esquire, and the defendants, Jameson Memorial Hospital and Sonia K. Panesar, M.D., represented through counsel, Ryan J. King, Esquire, and after consideration of the arguments and briefs presented and submitted by counsel and a complete and thorough review of the applicable record, the court enters the following order, and it is hereby ordered, adjudged and decreed as follows:

1. The court notes that plaintiffs have filed a praecipe to mark action discontinued as to all defendants as to Counts I, IV, VI, VII, VIII, IX, and X, so therefore those Counts of the complaint are discontinued without prejudice.

2. The praecipe to discontinue filed by the plaintiffs strikes Stacey Holmes as a plaintiff in the above captioned case and all future pleadings and orders shall reflect that the only plaintiff is Patricia Young.

3. In accordance with the attached opinion, the preliminary objection in the nature of insufficient specificity for Count II of the complaint is sustained.

4. In accordance with the attached opinion, the preliminary objection in the nature of a demurrer to Count III of the complaint regarding respondeat superior is sustained and Count III of the complaint is hereby dismissed with the plaintiff to incorporate said doctrine into Count II of the complaint.

5. In accordance with the attached opinion, all remaining preliminary objections in the nature of a demurrer to the

claims for intentional infliction of emotional distress and punitive damages are overruled.

6. Plaintiff is granted relief to file an amended complaint within thirty (30) days after notice of this order of court.

7. The prothonotary shall serve a copy of this order of court upon counsel of record, Robert E. Mielnicki, Esquire, and Ryan J. King, Esquire.